Richard SPERLING, et al., individually and on behalf of others similarly situated, Plaintiffs,

v.

HOFFMAN–LA ROCHE, INC.,
Defendant.

Civ. A. No. 85–2138.

United States District Court,
D. New Jersey.

Jan. 5, 1988.

Ben H. Becker, Schwartz, Tobia & Stanziale, Montclair, N.J., Leonard N. Flamm, Hockert & Flamm, New York City, for plaintiffs.

John A. Ridley, Richard S. Zackin, Crummy, Del Deo, Dolan, Griffinger & Vecchione, Newark, N.J., for defendant.

## OPINION

HAROLD A. ACKERMAN, District Judge.

■ This is a putative class action brought by former employees of defendant pharmaceutical company, on behalf of themselves and others similarly situated, alleging violations of the federal Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621 *et seq.* (the "ADEA"), the New Jersey Law Against Discrimination, N.J.S.A. §§ 10:5–1 *et seq.* (the "LAD"), and the New Jersey common law of contracts. Before me now are a number of motions on which U.S. Magistrate G. Donald Haneke has filed reports and recommendations ("R & R's"). Plaintiffs have objected to most of the Magistrate's recommendations, and defendant has objected to the remainder. Therefore, I must now make a *de novo* review of each of these matters. *See* 28 U.S.C. §§ 636(b)(1)(B) and (b)(1)(C); Local Rule 40.D.5; *see also Henderson v. Carlson,* 812 F.2d 874, 878–79 (3d Cir.1987). I note in the alternative that even if some of these matters are properly considered nondispositive under 28 U.S.C. § 636(b)(1)(A), they all concern questions of law only, and therefore are subject to plenary review by me. *See* 28 U.S.C. § 636(b)(1)(A); Local Rule 40.D.4.

Also before me is a request by plaintiffs that discovery be allowed to go forward. The Magistrate stayed all discovery by plaintiffs when he received the referral of motions for report and recommendation. Defendant has been permitted to conduct discovery on a single issue only. Whether I view plaintiffs' request as a timely appeal from the Magistrate's most recent discovery decision, which was filed on May 6, 1987 and ordered that the discovery stay continue until I issued my decision on the R & R ·matters, or as a new request made directly to me, to be decided in the context of my other decisions today, I find that plaintiffs' request is properly before me.

## I. BACKGROUND

Before specifying exactly which issues require my consideration, I shall briefly recount the factual background to and procedural history of this case. On February 4, 1985, defendant allegedly fired or demoted about 1,200 employees as part of a systematic reduction in force, or "RIF," executed in furtherance of a company program which defendant called "Operation Turnabout." In the following months, Richard Sperling, Frederick Hemsley, and Joseph Zelouskos, the 3 named plaintiffs in this case, took the necessary procedural steps

to file an ADEA action in this court. Plaintiffs' original complaint, filed on May 7, 1985, charged as its first count that defendant had violated the rights under the ADEA of a defined class of employees. Count 2 charged defendant with ADEA violations against the named plaintiffs only. Count 3 charged defendant with violating the rights under New Jersey's LAD of the named plaintiffs and the defined class. On July 3, 1985, plaintiffs filed an amended complaint which added a 4th count, asserting violations of New Jersey contract law by defendant against the named plaintiffs and the defined class.

At the time the case was filed, and up until late 1986, the case was assigned to then Chief Judge Clarkson Fisher. During that time, each side in the case made a number of motions. These motions concerned the following issues: the propriety of notice from the court to potential class members, the dismissal of certain claims, class certification, the legal propriety of earlier communications by plaintiffs and their counsel with putative class members, and discovery. Judge Fisher referred the motions to Magistrate Haneke for decision, or in the case of dispositive motions, for report and recommendation. The Magistrate suspended all discovery by plaintiffs pending decision on the motions, but did allow defendant to conduct discovery on a single limited issue.

The Magistrate filed his initial Report and Recommendation on February 6, 1987. As the newly assigned judge on the case, that R & R came to me. I remanded the matter to the Magistrate for fuller discussion. On May 5, 1987, the Magistrate issued a supplemental Report and Recommendation, more fully explaining the reasoning behind his recommendations regarding the parties' outstanding motions. On May 6, 1987, the Magistrate filed an additional Report and Recommendation, which addressed a motion by plaintiffs to equitably toll the statute of limitations for putative class members who had not yet joined Count 1. The tolling motion had been filed soon after the case was reassigned to me, and I had referred it to the Magistrate, who at that time had yet to produce his

supplemental R & R. On that same day, May 6, 1987, the Magistrate also issued a decision reasserting his stay of discovery in the matter, until the issues addressed in his R & R's were finally resolved by an order from me.

Between them, the two sides objected to each of the Magistrate's recommendations, thus bringing before me for *de novo* review all the issues considered by the Magistrate except the issue of the stay of discovery, which as I have previously explained I find to be before me as either a timely appeal or as a new request made directly to me.

## II. SUMMARY OF THE ISSUES

The issues before me may be summarized as follows. First, there are the issues related to Count One only. Count One states a claim under the ADEA on behalf of a defined class of allegedly injured employees. Plaintiffs moved for discovery from defendant of the names and addresses of all the employees fired or demoted in the February 4, 1985 RIF who fit within the definition of the class plaintiffs wish to represent on Count One, for the court to send out notice of the pendency of this action to whichever putative class members have not yet filed with the court a written consent to join the action, and for defendant to publish notice of the action in the company newspaper and post notice on company billboards. In requesting this relief, plaintiffs argued that they had already satisfied the special statutory requirements imposed under the ADEA for maintaining a class-wide ADEA claim. Defendant opposed plaintiffs' motions, and cross-moved to invalidate the written consents to join the action which had already been filed with the court and to have "corrective notice" sent out to those who had filed consents. Plaintiffs eventually filed an additional motion to equitably toll the statute of limitations on Count One for those putative class members who had not yet joined the action. In reviewing all these motions, the Magistrate concluded that there was no basis in the record at that point for deciding that Count One could be maintained as

an ADEA class claim. He recommended that the consents already filed be invalidated, that employees who had already consented be sent, under court supervision, "corrective notice" regarding the action, that the court send notice to no other employee, that the requests for posting and publication be denied, and that the equitable tolling motion be denied at this time. The Magistrate also kept his discovery stay in place, rejecting plaintiffs' request for discovery regarding the names and addresses of all the RIF'ed employees who fit the definition of the class plaintiffs wished to represent. Before me, plaintiffs renew all their requests, and defendant renews its requests.

Second, there are the issues related to Counts One, Two and perhaps Three. Count One states the ADEA class claim, while Count Two states the individual ADEA claims of the named plaintiffs. Count Three states a pendent state LAD claim on behalf of the named plaintiffs and the same class defined by plaintiff under Count One. Defendant moved to dismiss all age discrimination claims sounding in a "disparate impact" theory. I note that although defendant premises its disparate impact arguments on federal-law citations only, defendant never expressly limits those arguments to the federal age claims only. Conceivably, defendant intends to attack Count Three allegations sounding in a disparate impact theory as well as allegations in Count One and Two. The Magistrate recommended denying the motion as premature. Defendant renews its request before me.

Third, there are the issues related to Counts Three and Four. Count Three states a pendent state LAD claim on behalf of the named plaintiffs and the class defined by plaintiffs under Count One. Count Four states a pendent state contract claim on behalf of the named plaintiffs and the class defined by plaintiffs under Count One. Plaintiffs moved to certify the classes under Counts Three and Four in accordance with Fed.R.Civ.P. 23 and to have the court notify class members of the claims and of their right to exclude themselves by notice to the court. Defendant moved to dismiss Count Four under the discretionary principles of pendent jurisdiction, and additionally opposed class certification on both Counts. The Magistrate recommended that Count Four be dismissed under the discretionary principles of pendent jurisdiction, or alternatively, if jurisdiction was not declined, that Rule 23 certification be denied on that count. He also recommended that Rule 23 certification be denied as to Count Three. Before me, both sides renew their respective requests.

Finally, there is plaintiffs' request that discovery go forward.

I have summarized the issues before me on a claim-by-claim basis. I shall now consider them in a somewhat different organization, so as to simplify the tangled interconnections which have grown up among them. This tangle must be attributed in some part to the complexity of the issues themselves, but in larger part it derives from the extraordinarily overlong and convoluted briefing in which the parties have wrongly been allowed to indulge.

### III. DISPARATE IMPACT

Defendant moves under Fed.R.Civ.P. 12(b)(6), and alternatively under Fed.R.Civ. P. 56, to dismiss any age discrimination claims made by plaintiffs which are premised on a theory of "disparate impact." *See, e.g., Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971) (racial discrimination under Title VII); *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) (racial discrimination under Title VIII); *Dothard v. Rawlinson,* 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977) (sex discrimination under Title VII). *See also Geller v. Markham,* 635 F.2d 1027 (2d Cir.1980), *cert. denied,* 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981) (applying disparate impact theory to ADEA age discrimination claims); *Lusardi v. Xerox Corp.,* 118 F.Supp. 351, 362 (D.N.J.1987) (stating that disparate impact theory applies under

the ADEA). But *see Markham v. Geller*, 451 U.S. 945, 947, 101 S.Ct. 2028, 2029, 68 L.Ed.2d 332 (1981) (Rehnquist, J., dissenting from denial of certioriari) (arguing that disparate theory is inapplicable to ADEA claims).

Defendant purports to save for another day the argument that, no matter what the set of facts, disparate impact theory cannot apply in age discrimination actions. *See, e.g.,* Defendant's Brief on Disparate Impact prepared for March 24, 1986 return date, at page 4 note 2. At this point, defendant argues merely that disparate impact cannot be invoked in the case at hand. The thrust of defendant's argument is that disparate impact analysis is applicable only in the case of a facially age-neutral, "single, discrete condition of employment, mechanically applied, which has a statistically significant adverse impact" on a protected group, defendant's brief, cited supra, at page 3, and that the Operation Turnabout RIF was no such condition.

It is clear to me that defendant's discriminatory impact motion must be denied at this time. First, defendant's motion cannot be granted under 12(b)(6). At this point in the case, defendant has reserved any argument that disparate impact theory is generally inapplicable in age discrimination suits. And, if one assumes the propriety of disparate impact analysis for the sake of argument, *see Massarsky v. General Motors, Corp.,* 706 F.2d 111, 120 (3d Cir.), *cert. denied,* 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983), and even the propriety of the specific disparate impact definition asserted by defendant, it is not beyond doubt that plaintiffs could not prove a set of facts which would establish that defendant committed a disparate impact violation. *See, e.g., Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1975). It would be consistent with plaintiffs' pleadings, for example, if defendant in fact fired people based on the size of their salaries, *see Geller v. Markham,* 635 F.2d at 1030, or on the number of years they spent developing expertise in one technical area to the exclusion of others, *see Blum v. Witco Chemical Corp.,* 829 F.2d 367, 371–72 (3d Cir.1987), and by so doing

caused the termination or demotion of an unacceptably high percentage of older workers.

■ Second, defendant's motion cannot be granted under Rule 56. The crux of defendant's argument on this motion is made out in the thick affidavits which defendant filed in support of its contention that the Operation Turnabout RIF involved complciated, subjective, multifactored judgments about which employees to fire, which to demote. These detailed factual submissions are necessary to defendant's argument, because that argument turns on a claim about how, in fact, the "Operation Turnabout" RIF worked. For reasons which remain puzzling to this court, however, plaintiffs have not been allowed one whit of discovery to aid them in challenging defendant's version of how, in fact, the RIF worked. Under Rule 56(f), I find that any summary judgment motion which purports to turn on a factual description of decisionmaking in the RIF must await a time when plaintiffs have received a decent opportunity to conduct their own discovery regarding that decisionmaking. *See Sames v. Gable,* 732 F.2d 49, 51–52 (3d Cir.1984); *see also J.E. Mamiye & Sons, Inc. v. Fidelity Bank,* 813 F.2d 610, 618–19 (3d Cir.1987) (Becker, J., concurring) (arguing that "the timing issue" governed by Rule 56(f) has taken on greater importance in light of the recent opinions of the Supreme Court in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and *Celotex Corp. v. Catrett,* 477 U,S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), concerning the proper standards for summary judgment).

For all these reasons, defendant's disparate impact motion must be denied, without prejudice.

## IV. THE ADEA CLASS

In Count One, plaintiffs seek relief under the ADEA on behalf of a class of employees which is a subgroup of all the employees terminated or demoted in the February 4, 1985 RIF.

■ In most federal class actions, including those involving racial and sex discrimination, the issues of joinder among, and notice to, potential class members are governed by Fed.R.Civ.P. 23. Class claims brought under the ADEA, however, are different. Section 7(b) of the ADEA, 29 U.S.C. § 626(b), incorporates certain select provisions of the federal Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, to establish the "powers, remedies, and procedures" by which the ADEA is to be enforced. One of these provisions, 29 U.S.C. § 216(b), provides for class actions as follows:

> An action to recover the liability prescribed ... may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

Thus it has generally been held that ADEA class actions may proceed under 29 U.S.C. § 216(b) only, and not under Rule 23. *See, e.g., LaChapelle v. Owens–Illinois, Inc.,* 513 F.2d 286, 289 (5th Cir.1975); *Lusardi v. Xerox Corp.,* 99 F.R.D. 89, 92 (D.N.J.1983), *app. dismissed,* 747 F.2d 174 (3d Cir.1984); and cases cited in *Lusardi,* 99 F.R.D. at 92. Or, as it has otherwise been expressed repeatedly, § 216(b) creates an "opt-in" mechanism for class formation and Rule 23 creates an "opt-out" mechanism, and, in the case of the ADEA, the incorporation of the former prohibits application of the latter. *LaChapelle,* 513 F.2d at 289; *Lusardi,* 99 F.R.D. at 92. *See* cases cited in *Lusardi,* 99 F.R.D. at 92. I note that courts commonly employ terms such as "class" and "certification" when discussing § 216(b) claims, even though such terms are hallmarks of Rule 23 litigation and are not mentioned in § 216(b). *See, e.g., Lusardi,* 99 F.R.D. at 93. Whatever nomenclature is used, however, it is clear that the maintenance of ADEA representative claims, and the maintenance of Count One

in this case, is governed by § 216(b) and not Rule 23.

■ As the district court noted in *Lusardi, supra,* at 358, it is clear on the face of § 216(b) itself that an ADEA plaintiff may "maintain" a suit on behalf of other employees once two conditions are met. First, the named plaintiffs and the other employees must be "similarly situated," and second, the other employees must filed written consents to join the action. The courts have applied § 216(b) in a manner which supports this view of the statute. *See, e.g., Frank v. Capital Cities Communications, Inc.,* 88 F.R.D. 674, *amended on other grounds,* 509 F.Supp. 1352 (S.D.N.Y.1981); *Plummer v. General Electric Co.,* 93 F.R.D. 311 (E.D.Pa.1981).

Under these principles of § 216(b), I must decide the issues described earlier as "relating to Count One only." The parties' dispute regarding these issues began when plaintiffs moved for discovery of the names and addresses of all the employees who fell within the definition of the class plaintiffs sought to represent, for notice from the court to absent class members regarding the existence of this action, and for the posting and publication of notice on defendant's premises. I shall begin my analysis with these motions.

### 1. Court Facilitation of Notice to the Class

The class of employees which plaintiffs seek to represent on Count One is defined by plaintiffs, in their pleadings and other papers, as follows:

> All persons, male and female, in the present or former employ of the Company, now or hereafter executing and filing written consents to participate and join in this action, pursuant to 29 USC 216(b), who were, at any time from on or about January 1, 1985 to date:
>
> (a) over 40 but less than 70 years of age;
>
> (b) employed by HLR at any of its locations nationwide in a non-union position or a position not subject to a collective bargaining agreement;

(c)(1) if an exempt employee (i) with an HLR salary grade level of 10 or above, or (ii) if below an HLR salary grade level of 10, with a base annual salary at or greater than the midpoint of such salary grade level, or (2) if a non-exempt employee, with a base annual salary of at least $20,000;

(d) involuntarily discharged, laid off, terminated, downgraded or demoted from employment by HLR:

(e) subjected to such adverse employment actions as described in (d) pursuant to or in connection with a staff reduction action and/or layoff implemented by HLR on or about February 4, 1985.

At the present time, roughly 400 employees have filed with the Clerk of this Court written notices of their consent to join the action. Perhaps 1,200 people all told were fired or demoted; plaintiffs belief that up to 600 may fit the class they wish to represent. Plaintiffs seek discovery against defendant and the posting and publication of notice on defendant's premises in order to find those missing class members, if any. Once they are found, plaintiffs want the court to notify them of this action and provide them with opt-in forms.

In *Lusardi*, the district court decided to send written notice from the court to absent members of a class that eventually numbered more than 1,300. 99 F.R.D. at 93, *see also supra*, at 358. The defendant in that case then attempted an immediate appeal of the notice decision under the collateral-order doctrine. *Lusardi v. Xerox Corp.*, 747 F.2d 174 (3d Cir.1984). The Third Circuit dismissed the appeal, but noted in dictum that the notice issue was "novel and unresolved." 747 F.2d at 176. In addition, the appeals court stated that:

> There is substantial support in the case law for Xerox' position that a district court may not authorize a class-based notice in an ADEA action. *See, e.g., Dolan v. Project Construction*, 725 F.2d 1263 (10th Cir.1984); *Kinney Shoe Corp. v. Vorhes*, 564 F.2d 859 (9th Cir.1977). But there is equally strong precedent supporting the district court's order authorizing notice to a conditional ADEA

> class. *See, e.g., Braunstein v. Eastern Photographic Laboratories, Inc.*, 600 F.2d 335 (2d Cir.1978), *cert. denied*, 441 U.S. 944 [99 S.Ct. 2162, 60 L.Ed.2d 1046] (1979); *see also, Woods v. New York Life Ins. Co.*, 686 F.2d 578 (7th Cir.1982); *Allen v. Marshall Field & Co.*, 93 F.R.D. 438 (N.D.Ill.1982). This court has not yet addressed the notice issue.

747 F.2d at 176.

■ Apparently, it was not a matter in dispute in *Lusardi* that plaintiffs could conduct discovery against defendant to identify missing class members. *See* 99 F.R.D. at 93 n. 8. In the case at hand, the issue of discovery and the issue of posting and publication, as well as the issue of notice from the court, are in dispute. I consider the issues of discovery, posting and publication, and notice from the court to represent three aspects of an overarching issue: to what extent may a court offer the mechanisms of judicial process to aid ADEA class plaintiffs in filling their class with all its possible members? I shall decide the motions by plaintiffs now under discussion by considering this overarching issue. I take the Third Circuit's comments in *Lusardi*, quoted above, to apply with equal force to the overarching issue I have identified. Therefore, I shall start my consideration with a review of the divided case law, including cases cited by the Third Circuit in the *Lusardi* opinion.

I turn first to the cases opposing court involvement. In *Dolan v. Project Construction Corp.*, 725 F.2d 1263 (10th Cir.1984), a Fair Labor Standards Act ("FLSA") case for unpaid compensation, brought as a representative action under § 216(b), the Tenth Circuit prohibited "active assistance of plaintiff" by the court in contacting new class members. 725 F.2d at 1268. "Active assistance" included notice from the court and any discovery of names intended solely to facilitate the search for new class members. 725 F.2d at 1267 and note 4. The Tenth Circuit based its holding on its reading of the legislative history behind the most recent amendments to § 216(b), which predated passage of the ADEA itself, 725 F.2d at 1267–68;

on its conclusion that missing class members cannot be bound by the result in an opt-in class litigation, and therefore will not be prejudiced by lack of notice, 725 F.2d at 1268; on its conclusion that without such prejudice due process did not require notice, 725 F.2d at 1269; and on its conclusion that requests to produce names and addresses are "often" great burdens on defendants, 725 F.2d at 1267.

In *Kinney Shoe v. Vorhes,* 564 F.2d 859 (9th Cir.1977), another FLSA unpaid compensation case brought as a § 216(b) representative action, the Ninth Circuit prohibited notice by the court to absent class members and, apparently, any discovery of names and addresses intended solely to aid the search for new class members. 564 F.2d at 864. The court reasoned that Congress' selection of § 216(b) rather than Rule 23 in FLSA representative actions indicated an affirmative intent that procedures under Rule 23 be banned from FLSA representative actions, 564 F.2d at 862–64; that, apparently, even if Congress were neutral regarding notice under § 216(b), neither § 216(b) nor any other law gave couts the affirmative power to issue notice, 564 F.2d at 863–64; that due process did not require notice when the case was an opt-in action, 564 F.2d at 863; and that courts should avoid "stirring up" litigation, 564 F.2d at 863.

In *McKenna v. Champion International Corp.,* 747 F.2d 1211 (8th Cir.1984), the Eighth Circuit decided in an ADEA case that courts could neither send notice nor allow discovery of names and addresses. Although the court found "little light" in the legislative history of § 216(b), it did rely on the arguments, mentioned in regard to the other cases described above, that due process did not compel notice and that neither § 216(b) nor any other law expressly empowered courts to send notice, 747 F.2d at 1213–14. The court added that, given the comparatively intricate procedures with which plaintiffs must contend in certifying a Rule 23 class, plaintiffs in § 216(b) cases should not enjoy the "benefits of court-directed notice" without carrying the burden of Rule 23 pleading and proof, 747 F.2d at 1213. The court also

noted that the existence of a "remedial purpose" in the FLSA and the benefit in avoiding a "multiplicity of suits" were on balance unpersuasive reasons to allow court notice, 747 F.2d at 1213–14. *See also, e.g., Goerke v. Commercial Contractors & Supply Co.,* 600 F.Supp. 1155, 1158–61 (N.D.Ga.1984) (courts have no power to send notice or approve notice sent by others); *McGinley v. Burroughs Corp.,* 407 F.Supp. 903, 911 (E.D.Pa.1975) (congressional intent that Rule 23 not be used includes an intent that "Rule 23 type notice" be prohibited).

On the other hand are cases approving of varying degrees of court facilitation of ADEA class formation. In *Braunstein v. Eastern Photographic Laboratories, Inc.,* 600 F.2d 335 (2d Cir.1978), *cert. denied,* 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1046 (1979), an FLSA action for compensation, a Second Circuit panel decided in a *per curiam* opinion that although due process does not require notice in an opt-in case, court-authorized notice would be allowed because, in light of the "broad remedial purpose" of the FLSA, it "makes more sense" to read the silence in § 216(b) on the notice issue as permitting notice "in an appropriate case," rather than as prohibiting notice; also, notice would help avoid a multiplicity of lawsuits, 600 F.2d at 336.

The Seventh Circuit took a notable intermediate position on court involvement in *Woods v. New York Life Insurance Co.,* 686 F.2d 578 (7th Cir.1982). *Woods* was an ADEA case brought as a representative action under § 216(b). The Seventh Circuit found there to be no legislative history behind § 216(b) which was "pertinent to the issue of notice," 686 F.2d at 581, and further found it to be "sufficiently unlikely that Congress, having created a procedure for representative actions, would have wanted to prevent the class representative from notifying other members of the class that they had a champion," 686 F.2d at 581. The court approved discovery against defendant to uncover unknown class members; approved notice by plaintiffs, without the involvement of the court or defendant, to newly discovered members prior to the

filing of the suit; and required that notice by plaintiffs after the filing of the suit be regulated in manner and content by the court, after defendant has received an opportunity to be heard on the propriety of the notice. 686 F.2d at 580–81. The court forbade, however, any "judicial imprimatur" in the notice which might be construed as the court's "invitation" to join the suit. 686 F.2d at 581–82. See also Judge Eschbach's partial dissent in *Woods*, arguing that the decision whether or not to issue notice from the court directly should be left to the discretion of the trial judge. 686 F.2d at 582.

In *Allen v. Marshall Field & Co.*, 93 F.R.D. 438 (N.D.Ill.1982), the district court found that the legislative history behind § 216(b) shed "no light" on the issue of whether silence on the notice issue should be read as prohibiting or permitting notice from the court. 93 F.R.D. at 441. Citing *Braunstein,* the court then found that the broad remedial purpose of the ADEA, 93 F.R.D. at 442, as well as the judicial economies presented by the joinder of lawsuits, 93 F.R.D. at 444, favored the transmittal of notice from the court.

On the issue of discovery only, a recent district court case from within this circuit, *Vivone v. Acme Markets, Inc.*, 105 F.R.D. 65 (E.D.Pa.1985), supports the use of discovery to uncover the identities of missing class members. The court found that "implementation" of the ADEA, "a remedial statute," supported the "mixed" use of such discovery to prove the pattern or practice claims of the current plaintiffs and to find new plaintiffs. 105 F.R.D. at 68. The court also found that a request for certain routine employment information on all employees occupying certain job categories over a three-year period, a group estimated at less than 280 people, was not burdensome. 105 F.R.D. at 67–68. *See also, e.g., Lusardi,* 99 F.R.D. at 93 (notice from the court); *Johnson v. American Airlines, Inc.,* 531 F.Supp. 957 (N.D.Tex.1982) (notice from the court); *Monroe v. United Air Lines, Inc.,* 90 F.R.D. 638 (N.D.Ill.1981) (letter notice from plaintiffs ending with the line: "This notice has been authorized by Honorable Milton I. Shadur, the judge to whom these cases are assigned."); *Riojas v. Seal Produce, Inc.,* 82 F.R.D. 613 (S.D.Tex.1979) (notice from the court).

After careful consideration of these cases and the arguments they raise, I find that it is permissible for a court to facilitate notice of an ADEA suit to absent class members in appropriate cases, so long as the court avoids communicating to absent class members any encouragement to join the suit or any approval of the suit on its merits.

I start my analysis with § 216(b) itself, which is wholly silent on the issue of notice and court involvement. Turning next to the legislative history of § 216(b), I find it similarly silent on the issue, at least as it might relate to the case at hand. The version of § 216(b) now in effect was created by amendments to the FLSA passed in 1947. Cases such as *Dolan* rely on the legislative history of the 1947 amendments to support a restrictive view of court involvement. I disagree with such assessments. The legislative history of the 1974 amendments consists of House Report No. 71 of the 80th Congress, 1st Session. *See* 1947 U.S.Code Congressional Service (80th Cong., 1st Sess.) 1029. That report expressly divides itself into two "parts." 1947 U.S.Code Congressional Service at 1029. The second part concerns "all" FLSA actions but relates only to statute-of-limitations, good-faith defense, settlement, and damages issues. 1947 U.S.Code Congressional Service at 1035–36. The first part discusses only "certain claims, actions, and proceedings concerning alleged wages and overtime compensation," especially the "portal-to-portal" actions which had been authorized the year before by the U.S. Supreme Court in *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). 1947 U.S.Code Congressional Service at 1029–35. Because part 2 of the House Report does not concern itself with the issue of court involvement in notice to absent class members, and part 1 does not concern cases aside from portal-to-portal compensation cases, I find nothing in the legislative history of § 216(b) which might apply to the issue of court-facilitated

notice, at least when it arises in a case other than a portal-to-portal compensation case. *See Woods,* 686 F.2d at 581; *Allen,* 93 F.R.D. at 441–42.

I next move beyond § 216(b) to the ADEA itself, which, as the statute incorporating § 216(b) and creating the claim at issue here, might add its own instructions as to how the notice issues in this case should be decided. *See, e.g., Vivone,* 105 F.R.D. at 69 (in ADEA class action, court reads the limits of § 216(b) in light of the special characteristics of ADEA claims). Although the legislative history of the ADEA is silent on these issues, it is clear to me that the ADEA is a remedial statute, which as a matter of traditional interpretative theory, should be broadly construed to effectuate its general purpose: ameliorating age discrimination in employment. *Holliday v. Ketchum, McLeod & Grove, Inc.,* 584 F.2d 1221, 1229–30 (3d Cir.1978) *(en banc); Bonham v. Dresser Industries, Inc.,* 569 F.2d 187, 193 (3d Cir.1977). *See Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 765–66, 99 S.Ct. 2066, 2076, 60 L.Ed.2d 609 (Blackman, J. concurring); *see also Ricks v. Delaware State College,* 605 F.2d 710, 712 (3d Cir.1979), *rev'd on other grounds,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (noting the "common humanitarian and remedial purpose" of the ADEA and Title VII). See generally Singer, Sutherland Statutory Construction, §§ 60.01 *et seq.* (4th ed.).

Given this conclusion, I find that the ADEA itself, consistent with the otherwise silent § 216(b), generates a capacity for courts to facilitate notice to absent ADEA class members. If courts refrain from facilitiating notice to missing class members, the enforcement of ADEA remedies for violations which victimize a group of people will be limited only to those victims who are already known to their "champion," *Woods,* 686 F.2d at 581, or who are fortunate enough to hear and heed "the vagaries of rumor and gossip," *Lusardi,* 99 F.R.D. at 93, or who are courageous enough to recognize the wrong done them and sue on their own. The ADEA cannot tolerate the piecemeal remediation which would thereby result, at least in those in-

stances where the discriminatory act has victimized a large number of people. I note that even if § 216(b) does contain some restrictive Congressional intent regarding court-facilitated notice which I have failed to perceive, the applicability of that intent in ADEA cases is best discerned through the prism of the incorporating statute, the ADEA, and its general remedial goals. Therefore, even in this alternative situation some degree of court involvement in notice efforts would comport with the applicable statutory purposes.

■ In addition to the statutes involved and their legislative histories, it is clear to me that the general policy of judicial economy also supports some role for the courts in facilitating notice to an ADEA class. Such notice can obviously aid courts in collapsing a potentially high number of separate ADEA suits into one case. Policies against barratry or champerty are not to the contrary. *See, e.g., Braunstein,* 600 F.2d at 336; *Lusardi,* 99 F.R.D. at 93; *Johnson,* 531 F.Supp. at 959–60. I would indeed presume that any aid a court might lend to an ADEA notice effort should not in any instance go beyond the constraints on commercial speech under which lawyers must in all cases operate. *See, e.g.,* Rule 6 of the General Rules of this district, incorporating the American Bar Association Rules of Professional Conduct; Rules 7.1 and 7.2 of the ABA Rules; *Zauderer v. Office of Disciplinary Counsel,* 471 U.S. 626, 642–43, 105 S.Ct. 2265, 2277–78, 85 L.Ed.2d 652 (1985).

For all these reasons I find that courts may facilitate notice to absent class members in appropriate ADEA actions. For the reasons given in my foregoing analysis, I reject all the arguments to the contrary offered in the cases disfavoring court involvement.

■ Turning to the case at hand, I find it to be appropriate for this court to offer some degree of facilitation to plaintiffs' notice efforts. First, plaintiffs contend that up to 600 victims of defendant's alleged discriminatory RIF may exist, about 200 of whom are still unknown to plaintiffs

and have not opted in. I shall order defendant to comply forthwith with plaintiffs' request for discovery of names and addresses in order to aid the effort to contact these unknown people. I note that defendant has not made known to me any objection it might have to the burden this discovery might impose. *See Vivone*, 105 F.R.D. at 67–68 (request for routine personnel-file information on perhaps 280 employees is not burdensome).

I turn now to the issue of whether the court itself should issue the notice that will go out should absent class members be discovered. On this issue, I find instructive that part of the opinion of the Seventh Circuit in *Woods* which discusses the dangers inherent in courts placing their "imprimaturs" on notices sent out in opt-in class actions. Certainly, the reasons I have given in support of court facilitation of ADEA notice do not necessarily require that notice issue from the court itself; instead, plaintiffs or plaintiffs' counsel can put their names on the notice and still achieve the primary purposes behind notice: ensuring effective ADEA enforcement and fostering judicial economy. I note in passing that defendant has not seriously argued that plaintiffs themselves can or should be prohibited from communication with absent class members. *See, e.g., Dolan*, 725 F.2d at 1268–69 (citing, *inter alia, Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981)); *Vivone*, 105 F.R.D. at 67; *see also Rodgers v. U.S. Steel Corp.*, 508 F.2d 152, 163–65 (3d Cir.), *cert. denied*, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975).

■ At the same time, however, it does serve the purposes of judicial economy for the court to specify the content of the notice, so that further arguments regarding the propriety of the notice can be avoided and the court can fairly require that after such notice is given a final deadline for consents be imposed. Once the court has specified the content of the notice, however, it would be unfair, if not a genuine infringement of plaintiffs' free-speech rights, to, in effect, put words in the mouths of plaintiffs or plaintiffs' counsel without indicating the court's involvement in the preparation of the notice.

In the case at hand, I shall resolve these countervailing positions by allowing notice to go out from plaintiffs or plaintiffs' counsel, with a content specified by me. The notice shall indicate that this court has authorized the notice without in any way judging the merit of plaintiffs' claims or defendant's defenses. *See Monroe*, 90 F.R. D. at 641–42 (court approved sending of notice from plaintiffs which ended: "This notice has been authorized" by the court). In reaching this conclusion, I endorse and rely upon Judge Eschbach's partial dissent in *Woods*, which argued that the decision whether or not, in a specific case, to allow notice from the court or instead to employ some more tempered alternative is a "detail" which should be left to the discretion of the trial judge. 686 F.2d at 582. *See also, e.g., Riojas*, 82 F.R.D. at 619 (notice from the court itself was sent to class, but apparently a special need for such notice was shown because class members were migrant workers whose poverty and education left them with "no conception of legal rights they might possess").

The notice I authorize is contained in Appendix A of this opinion. Unless plaintiffs agree to a shorter deadline, I shall impose a cutoff date for new consents 45 days after plaintiffs send out this notice in the mail.

■ Finally, I turn to plaintiffs' request that notice be posted on "company bulletin-boards" on defendant's premises and published in defendant's "company newspapers." Given plaintiffs' allegation that defendant both fired and demoted employees in a discriminatory manner on February 4, 1985, notice of this sort would presumably aid in ensuring that all prospective class members learned of this action. Plaintiffs have not, however, posed their request with sufficient specificity, or presented specific facts regarding the existence of "company" bulletin boards and newspapers, such that I may fairly order defendant to comply. Plaintiffs' request is too vague; if plaintiffs return with a more specific request, stating where exactly and when

posting should be ordered, and in which newspapers, in what sort of format, and when publication should be ordered, I shall consider it. Plaintiffs can gather whatever information they need through regular discovery channels, which, as I shall explain more fully later in this opinion, are now to be reopened.

In short, I have decided that defendant must honor plaintiffs' discovery request for names and addresses forthwith, that notice by mail as contained in Appendix A of this opinion shall be allowed to go out bearing plaintiffs' or plaintiffs' counsel's names, and that the notice shall note that it has been authorized by the court. Plaintiffs' request for notice by posting and publication on defendant's premises is denied without prejudice because it is too vague.

I note that two of the reasons Magistrate Haneke gave for recommending that all of plaintiffs' notice and notice-related discovery motions be denied were that, under § 216(b), plaintiffs had failed to make a sufficient showing that all class members were similarly situated to the named plaintiffs, and also that the written consents so far filed with this court were flawed and should be invalidated. (As I discussed earlier, the only two requirements for maintaining a § 216(b) class action are that class members be similarly situated and that each absent class member file a consent to join the action.) I find neither of these two points sufficient to justify a denial of plaintiffs' discovery and notice motions.

### 2. *The "Similarly Situated" Requirement*

First, I discuss the "similarly situated" issue. On this point, plaintiffs need show only "that their positions are similar, not identical," to the positions held by the putative class members. *Riojas,* 82 F.R.D. at 616 (*citing Calabrese v. Chiumento,* 3 F.R. D. 435, 437 (D.N.J.1944)).

It seems clear from the language of § 216(b) alone that a § 216(b) representative action cannot be "maintained" unless all the employees represented are "similarly situated." The use of the word "maintained" in the statute, however, begs the

question as to when in a specific case a determination of "similar situations" should be made. That question may not be important in all ADEA cases, but it is in this case, for plaintiffs have sought court assistance in filling their ADEA class, and thus are seeking orders in support of the maintenance of their class claim before the class is fully assembled for court inspection. In light of this problem, the Magistrate apparently concluded that a "similarly situated" determination had to be made at the outset of the litigation, and after examining the record in its nascent form and finding that plaintiffs had failed to carry their burden (whatever he felt it to be) on the issue, he denied their notice and notice-related discovery motions. I reach a different conclusion.

It is clear from a review of the "similarly situated" caselaw that the issue of when the determination must be made has not received extended consideration. A determination as to whether class members are similarly situated is always fact-specific. *See, e.g., Bean v. Crocker National Bank,* 600 F.2d 754 (9th Cir.1979); *Lusardi, cited supra,* at 359; *Owens v. Bethelehem Mines Corp.,* 108 F.R.D. 207 (S.D.W.Va. 1985); *Behr v. Drake Hotel,* 586 F.Supp. 427 (N.D.Ill.1984); *Frank v. Capital Cities Communications, Inc.,* 33 E.P.D. Paragraph 34, 285 (S.D.N.Y.1983) [available on WESTLAW, 1983 WL 643]; *Allen v. Marshall Field & Co.,* 93 F.R.D. 438 (N.D.Ill. 1982); *Franci v. Avco Corp.,* 538 F.Supp. 250 (D.Conn.1982); *Plummer v. General Electric Co.,* 93 F.R.D. 311 (E.D.Pa.1981); *Sussman v. Vornado, Inc.,* 90 F.R.D. 680 (D.N.J.1981); *Locascio v. Teletype Corp.,* 74 F.R.D. 108 (N.D.Ill.1977); *Cavanaugh v. Minneapolis Aquatennial Ass'n.,* 82 Lab. Cas. Paragraph 33,558 (D.Minn.1976) [available on WESTLAW, 1976 WL 1699]; *Burgett v. Cudahy, Co.,* 361 F.Supp. 617 (D.Kan.1973). Nevertheless, only a few courts have bothered to explain how much of a factual record they required before they would decide the issue. *See Haynes v. Singer Co.,* 696 F.2d 884, 887–88 (11th Cir.1983) (not error for district court to decline to circulate notice of FLSA class

claim when only evidence of widespread violation was counsel's unsupported assertions); *Locascio*, 74 F.R.D. at 112 (a one-day layoff alleged; court found plaintiffs to be similarly situated based on a reading of plaintiffs' complaint, bolstered by defendant's answers to interrogatories, which confirmed use of "uniform group of rules" for all layoffs); *Sussman*, 90 F.R.D. at 684 (termination scheme running from 1976 to 1977; court found plaintiffs to be similarly situated based on "undisputed facts" regarding the dates when employees departed, plaintiffs' allegations of discriminatory intent, and the subsequent hiring of younger employees); *Frank*, 33 E.P.D. at page 33,084–85 (defendants alleged a "subtle" campaign of harassment through various means, over an extended period of time, against employees in varied jobs in three states; court allowed case to proceed as a class action but reminded plaintiffs that they must prove at trial the existence of a single discriminatory policy touching all plaintiffs in order to "have justified their treatment as a class"); *Wilson v. Babcock & Wilcox Co.*, No. 82 Civ. 5685 (CES), slip op. at 4–5 (S.D.N.Y. April 27, 1983) (a discriminatory RIF alleged; court-authorized notice would not be circulated until plaintiff "at least has a *prima facie* case" against defendant, which plaintiff had not presented by relying on allegations in complaint when defendant presented affidavits contesting those allegations); *Lusardi*, 99 F.R.D. at 93 and *cited supra*, at 359 (allegation of nationwide discriminatory policy operating over four years; court "conditionally" certified class for notice and discovery purposes, then de-certified class after discovery revealed 75 RIFs covering over 17 separate organizations within defendant corporation); *Cavanaugh*, 82 Lab. Cas. at pages 47,924–25 (FLSA wage compensation case; court should wait until all interested employees have filed consents before deciding "similarly situated" issue).

In the case at hand, the issue of "similar situations" is in dispute. Plaintiffs have relied on their pleadings and on a number of affidavits, notably the joint affidavit of Frederick Hemsley and Joseph Zelauskas at paragraphs 10, 12, 13, 14, 17 and 19 and the affidavit of Richard Sperling at paragraph 11, to allege the existence of a discriminatory purpose or impact running through the Operation Turnabout RIF and uniting all members of their self-defined class with a common cause of their injuries. Defendant has in turn submitted affidavits in support of its argument that at least some of the individuals already in the case are not similarly situated to the named plaintiffs.

I find, however, that notice to absent class members need not await a conclusive finding of "similar situations." To impose such a requirement would condemn any large class claim under the ADEA to a chicken-and-egg limbo in which the class could only notify all its members to gather together after it had gathered together all its members, and from which the class could escape only by refusing entry after some unpublicized cutoff date to additional class members who thereafter stumble upon the case by themselves. Such a scheme would of course violate the twin policies which I earlier found to support court participation in ADEA–class notice in the first place: broad ADEA remediation and judicial economy. In addition, to allow notice before the "similarly situated" issue is decided would insure that all possible class members who are interested are present, and thereby assure that the full "similarly situated" decision is informed, efficiently reached, and conclusive.

■ The question remains whether the record in this case on the "similarly situated" issue is sufficiently developed at this time to allow court-facilitated class notice. I find that it is. Plaintiffs have made detailed allegations in their pleadings, and have supported those allegations with affidavits which successfully engage defendant's affidavits to the contrary. Plaintiffs' allegations, as supported, describe a single decision, policy, or plan of defendant's, infected by a discriminatory aspect which led to the termination or demotion of every member of the class plaintiffs wish to represent, and the reallocation of responsibilities among the remaining, generally younger workers. I find that with these allega-

tions, plaintiffs set forth with some factual support all the necessary elements of an ADEA class claim. *See Berndt v. Kaiser Aluminum & Chemical Sales, Inc.,* 789 F.2d 253, 256–57 (3d Cir.1986). Whatever the minimum requirements may be for alleging that class members are similarly situated so as to merit court-facilitated notice, I find that the case at hand meets those requirements.

In reaching less than a final decision on the "similarly situated" issue, I do not mean to intimate that the ultimate burdens plaintiffs must sustain on that issue are heavy, or that significant discovery must be undertaken to sustain them. Without pre-judging my eventual decision I wish to point out what I have perceived so far regarding the standards governing a conclusive finding of "similar situations."

The relevant statutes and caselaw do not prescribe clear rules for determining whether putative class members are similarly situated. *See Lusardi, supra,* at 358–359. In general, however, courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination. *Frank,* 33 E.P.D. at page 33,085; *Owens,* 108 F.R.D. at 209–12. See the fact situations at issue in *Bean,* 600 F.2d at 756 (RIF implemented over 4 months); *Owens,* 108 F.R.D. at 208–09 (consolidation of two corporate divisions led to a RIF which at least ten employees complained of as discriminatory): *Allen,* 93 F.R.D. at 443 ("campaign" of discrimination by top management over 5 years); *Franci,* 538 F.Supp. at 252 ("massive" RIF executed over 3 years); *Plummer,* 93 F.R.D. at 312 (class members shared same company department, "similar" complaints of discrimination, and same requests for relief); *Sussman,* 90 F.R.D. at 682, 684 ("undisputed facts" showed that class members were forced out of company between 1976 promise of pension participation and effective date of their participation in 1977); *Locascio,* 74 F.R.D. at 112 (one large layoff on or about July 11, 1975); *Burgett,* 361 F.Supp. at 622 (all class members were (1) 60–65 years old, (2) long-time supervisory personnel, (3) fired and rehired at same time, for same reasons, (4) complaining of same injurious behavior, (5) seeking same relief). Contrast *Lusardi,* cited *supra* at 359 (class decertified due to, *inter alia,* "disparate factual and employment settings" of plaintiffs and the different defenses defendant had posed to different individual claims). In view of these apparent requirements, the victims of an allegedly discriminatory RIF have in dictum been called a "self-evident" class. *Frank,* 33 E.P.D. at page 33,084.

■ Whatever the proper standard may be for conclusively judging the "similarly situated" issue, however, it must be remembered that the "similarly situated" showing establishes nothing more than the right of plaintiffs to "maintain" a collective action. At trial, each individual plaintiff must bear his or her burden of proof as to each element of an ADEA claim. *See, e.g., Berndt,* 789 F.2d at 256–57. In the meantime, the "similarly situated" finding provides for unified trial preparation, prosecution, and defense on what appears to be a single discriminatory decision motivating all the terminations and demotions at issue. *See, e.g., Owens,* 108 F.R.D. at 209–10; *Frank,* 33 E.P.D. at page 33,085; *Franci,* 538 F.Supp. at 255–56 (and cases cited therein). Finally, nothing would appear to prevent the court from modifying or reversing a decision on "similar situations" at a later time in an action, as new facts emerge. *See Lusardi,* 99 F.R.D. at 93 and cited *supra,* at 358. But *see Cavanaugh,* 82 Lab.Cas. at page 47,925 (no "warrant" for engrafting" onto § 216(b) procedure the Rule 23 practice of conditionally certifying a class).

Putting these preceptions aside, however, I do in any event find that plaintiffs have at this point made a sufficient showing on the "similarly situated" issue to merit court-facilitated notice at this time in the action.

3. *The Validity of the Prior Consents*

Second, I discuss the issue of whether the consents already filed in this action are flawed, and must be invalidated. In con-

trast to the Magistrate, I find defendant's arguments for invalidating the consents to be generally without merit, and I deny defendant's requested relief.

According to those undisputed facts so far presented in this case, the efforts of plaintiffs to form a class on their ADEA claim began within a month of the February 4, 1985 RIF. A group of putative class members formed a group called R.A.D.A.R. ("Roche Age Discriminatees Asking Redress") on or about March 2, 1985. On March 7, 1985, a letter was mailed out to an unstated number of terminated Roche employees on R.A.D.A.R. letterhead, signed by 6 putative class members, soliciting consents to join and monetary contributions to cover litigation expenses. Attached to the letter was a document denominated "Consent to Join Action (Pursuant to 29 U.S.C. § 216(b))," which went on for 6 paragraphs and left blank spaces for the consenting employee's name, address, birthdate, age, salary, salary grade, and signature. The form was addressed to the Clerk of this court and bore the caption in this case. Later on, a newsletter, a press conference, and other publicity efforts were employed by plaintiffs to discover the names of additional class members. When new individuals were discovered, they were sent the March 7 letter and consent form. It is apparently not disputed that most or all of the approximately 400 consents filed so far in this action were filed after their signatories had received and read the March 7 letter.

Defendant voices a number of objections to the March 7 letter and argues that any consents filed as a result of solicitation through the letter are invalid as a matter of law. Defendant seeks an order voiding the consents on file and directing that a curative notice from the court and a new consent form be sent to each employee who filed a voided consent.

■ Neither party has cited to me any law regarding the proper meaning of "consent" within the context of a § 216(b) opt-in procedure, and I have found nothing directly on point. In a somewhat analogous context, however—the question of whether a law firm's client has effectively consented to representation by the law firm despite a conflict of interest on the law firm's part— the Third Circuit has described consent as "full and effective disclosure of all the relevent facts ... sufficient to enable [the consenting party] to make an informed decision ...." *IBM v. Levin,* 579 F.2d 271, 282 (3d Cir.1978). I will look for such disclosure and informed decisionmaking in deciding the validity of the consents in this case.

■ Defendant's first objection is that the March 7 letter and consent form fail to indicate that a person opting-in must believe himself or herself to be a victim of age discrimination. As a subsidiary point, defendant complains that the letter and form fail to explain that plaintiffs might try their case at least in part under a disparate impact theory. These are silly objections. First, defendant cites no authority, and I know of none, which makes a plaintiff's subjective belief in his victimization an element of an age discrimination claim. Defendant makes veiled accusations regarding Fed.R.Civ.P. 11, which requires that plaintiffs and plaintiffs' counsel possess a reasonable basis in fact for the allegations made in their pleadings. If defendant feels that Rule 11 has been violated, defendant can make an appropriate motion for sanctions. In any event, I will not read that rule as creating some new essential element of subjective belief for every claim filed in federal court. Second, I find no harm caused by the failure of the letter and consent form to discuss disparate impact theory. Read together, the letter and form make clear that the named plaintiffs in the action would exercise their discretion to select counsel, and that anyone opting in would be bound by the results of counsel's efforts. If a solicited employee wished to know more about the details of plaintiffs' litigation strategy, he or she could have inquired initially by calling any one of the 6 letter signatories, all of whom listed their phone numbers. Certainly, for defendant to demand that opt-ins receive up-front detail regarding alternative theories of liabili-

ty under the ADEA verges on the ludicrous.

Defendant's second objection is that the letter and form fail to alert opt-ins to the fact that defendant had denied any charges of age discrimination. I can think of few suppositions more likely to be entertained by a potential plaintiff on his own than the supposition that the potential defendant might oppose plaintiff's lawsuit. Express notice is hardly necessary. In any event, the clear implication of the March 7 letter is that defendant would offer plaintiffs vigorous opposition.

 Defendant's third objection has some degree of substance to it. Defendant complains that the letter and form fail to identify plaintiffs' counsel, or alert potential opt-ins to their right to pursue their claims separately with counsel of their own choice. Obviously, the selection of counsel, even in a civil case, is an important matter. As I noted earlier, however, the letter and form together make clear that R.A.D.A.R. had or would be selecting counsel at their discretion, and that the efforts of the R.A.D.A.R.–selected counsel would ultimately bind all opt-ins. Potential opt-ins seeking information regarding who that counsel might be could have phoned the letter signatories. In view of these facts, opt-ins who consented to join the action without knowledge of who would represent them did so with their eyes open. I reject defendant's related contention that the letter "implies that only through R.A.D.A.R.'s suit will one be able to obtain 'redress.'" Defendant's brief in support of motion to declare invalid and vacate consents, prepared for March 24, 1986 return date, at page 20. The letter does nothing of the kind; rather it argues that there is "strength in numbers" and makes no mention whatsoever of the legal validity or invalidity of separate actions. Defendant's third objection ultimately fails.

 Defendant's fourth objection, that the letter does not disclose the fact that an opt-in may be obliged to participate in discovery, is too insubstantial to discuss at length. Defendant's fifth objection, that the letter does not disclose potential liability for costs, is not only insubstantial, *see Sussman v. Vornado, Inc.*, Civil No. 78–422, letter opinion of Judge Stern at page 3 (D.N.J. October 18, 1978), it also ignores the long paragraph in the March 7 letter explaining the many types of expenses which plaintiffs must bear on their own and suggesting contributions of up to $200 each. This paragraph amply forewarned potential opt-ins that participation might be costly, even though it did not expressly mention the taxing of court costs. Defendant's sixth objection, that the letter and form did not adequately alert opt-ins to the legal effect which a judgment in this case would exert, is flat wrong. Paragraph 4 of the form states clearly that the opt-in consents "to be bound by any settlement of this action or adjudication of the court."

 Finally, I wish to address generalized and related objections of defendant's, expressed obliquely in some of defendant's specific objections discussed above. The first is that the March 7 letter and consent form are flawed because plaintiffs' counsel helped write them, but did not disclose this fact in the letter. The second is that the letter and form are inflammatory. I see no harm in plaintiffs' counsel failing to reveal their participation in writing the letter and form, because I see no way that such nondisclosure could have misled readers. I find in fact that by sending out the letter over the signatures of class members, not lawyers, plaintiffs and plaintiffs' counsel avoided misleading readers. A letter from a lawyer inviting one to join an action may create false hopes of success, or dissuade one from engaging a disinterested professional for a second opinion. A letter from another non-lawyer, however, does neither. Indeed, it may prompt a reader to be especially careful in deciding whether to join, or prompt him to first seek out an independent opinion from a lawyer close at hand and outside the case. Thus, the failure to disclose plaintiffs' counsel's role did not affect the quality of the consent registered by each opt-in. To the extent that defendant implies that such activity on the part of plaintiffs' counsel is unethical, I find defendant's contention strained, and irrele-

vent to the consent issue. Similarly, because the letter came from plaintiffs and not plaintiffs' counsel, whatever inflammatory language the letter might have used did not effect the validity of the consents. In the use of such phrases as " 'Black Monday' massacre," "war chest" and "Operation Throw 'Em Out," the overall effect of the letter and form is somewhat strident and self-righteous. But the fact that it is signed by plaintiffs, and not lawyers, alerts the reader to the possibilities of puffery or unrealistic expectations on the part of the signatories. In addition, the sober appearance and wording of the consent form signify that important legal consequences will flow from signing it, and thus further counteract whatever emotionalism the letter may bear. And certainly, the mere fact that plaintiffs' letter adopted some heated phrases cannot, without more, make it an invalid communication. *See, e.g., Zauderer,* 471 U.S. at 641–42, 105 S.Ct. at 2277. For these reasons, I reject defendant's generalized objections to the consents.

In short, the March 7 letter and consent form are not flawed in any way which vitiates the consents they solicited. I see no reason to doubt that the individuals who have so far opted into this action have done so after sufficiently full and effective disclosure, such that their decisions may be considered informed. Given this finding, defendant's request for curative notice is moot.

In reaching this conclusion, I distinguish *Partlow v. Jewish Orphans' Home of Southern California,* 645 F.2d 757 (9th Cir.1981), and *Walker v. Mountain States Telephone and Telegraph Co.,* 112 F.R.D. 44 (D.Colo.1986). In *Partlow,* the prior consents to joining an FLSA action were invalidated because plaintiffs' counsel has solicited the consents and, in the circuit where the case arose, "named plaintiffs' counsel had no power to solicit the class members." 645 F.2d at 759. No party in this case has argued for so restrictive an approach to notice under § 216(b) as the approach enforced in *Partlow* by the invalidation of the consents; indeed, I have already adopted in this opinion a much broad-

er approach to § 216(b) notice in ADEA actions. In *Walker,* an ADEA case before a district court bound by the *Dolan* decision, discussed *supra,* the prior consents were invalidated because the consent forms were captioned as pleadings, the notice did not explain the right of each member to obtain separate counsel, the forms were sent out without alerting the other side in the case, and the forms incorrectly discussed consent regarding other claims than the ADEA claim. 112 F.R.D. at 48. I find the first objection by the *Walker* court to be puzzling, but in any event I do not consider the consents in the case at hand to be misleading in their physical composition; I find the second objection by the *Walker* court distinguishable for the reasons given earlier regarding the selection of counsel; and I find the third and fourth objections by the *Walker* court to be irrelevant here. Thus, I do not find these cases to be at odds with my conclusion that the prior consents in this case are valid.

### 4. *Equitable Tolling*

The last remaining issue related to count one only is the equitable tolling issue. Plaintiffs seek a ruling from me that the statute of limitations on the ADEA claim, which plaintiffs concede ran out on February 4, 1987 (unless defendant committed a willful violation of the ADEA, in which case the statute of limitations runs until February 4, 1988), be tolled for all new-class members who file consents in response to the notice which I have authorized today.

■ It is clear that the statute of limitations governing ADEA claims may be tolled by "equitable considerations." *Callowhill v. The Allen–Sherman–Hoff Co.,* 832 F.2d 269, 274 (3d Cir.1987). In the case at hand, the two-year statute of limitations for non-willful violations ran out during a period of long delay in the decision of plaintiffs' notice motions. Plaintiffs filed their action in May 1985 and filed their notice motions in August 1985. For reasons which remain unclear, the Magistrate then stayed all discovery by plaintiffs; gave defendant four months of discovery on the

previously discussed issue of the validity of the prior consents; granted defendant another three months in which to prepare multiple briefs on plaintiffs' notice motions, and apparently, whatever other threshhold motions defendant desired to bring on its own behalf; waited another nine months to issue his first, insufficient, R & R; and then took another three months to, at my order, produce an R & R which gave reasons for his conclusions. All told, this process took 19 months, and ran three months past the 2-year limitations date of February 4, 1985. To this delay must be added the time since the Magistrate's supplemental R & R issued in May 1987 that I have taken to produce this decision. Of course, plaintiffs' counsel have intermittently registered their protests and pleas for speed, but delay has built up against them nevertheless.

Because this delay renders my ruling today less than "timely," *Owens v. Bethlehem Mines Corp.*, 630 F.Supp. 309, 311 (S.D.W.Va.1986), and will render moot my findings that court-facilitated notice will serve ADEA purposes unless equitable tolling is granted, and because defendant has long had timely notice of the claims in this case and plaintiffs' efforts to find more class members, plaintiffs have presented a facially compelling case for equitable tolling. *See also Owens*, at 312.

I will, however, put off a final decision on the issue until after the deadline for filing consents listed in the notice authorized today has run. Defendant believes that, despite the court's delay in deciding these motions and the notice defendant has already received, some new class members may have reasons for entering the action at this late date which would not support an exercise of equity in their favor. It is better to resolve this issue based on fact, not speculation. After all possible class members have consented in, plaintiff can present to the court each of those class members who need and want to have the limitations period tolled, and defendant can if it wishes contest the equity in tolling the limitations period for each of those people individually. The parties should be prepared to present factual allegations as to

why each of the late opt-ins did not join the action before February 4, 1987. *See Owens*, at 311 (deciding tolling issue for each applicable plaintiff individually). The notice which I authorize today shall state in part that individuals who fear that the statute of limitations may have run on their claims should not fail to join the action for that reason only, because any question regarding the applicability of the statute of limitations shall be decided by the court later in the case.

## V. PENDENT JURISDICTION AND THE STATE–LAW CLAIMS

As noted earlier, defendant has separate pendent-jurisdiction objections to each of the two state-law claims asserted by plaintiffs.

### 1. *The State Discrimination Claim*

Defendant argues that this court should refuse to certify a class under Fed. R.Civ.P. 23 because the principles of pendent jurisdiction do not allow such certification. The Magistrate found this argument persuasive.

The doctrine of pendent jurisdiction allows federal courts, in certain circumstances, to exercise jurisdiction in a discretionary manner over state-law claims which lack a federal jurisdictional basis of their own. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *see also Owens Equipment and Erections Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978); *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976). The Third Circuit has stated in a comprehensive fashion the test to be applied for determining whether an assertion of pendent jurisdiction is warranted. That test has three parts.

On the first level, a court must determine whether it has constitutional power to determine a state-law claim. This "power" test depends on whether there is a "common nucleus of operative fact" between the state claim at issue and the accompanying federal claims.... The second level requires the court to deter-

mine whether the exercise of jurisdiction at issue would violate a particular federal policy decision.... At this level, the Court may consider whether the plaintiff's assertion of ... pendent jurisdiction is an attempt to manufacture federal jurisdiction where it is otherwise foreclosed by the relevant statutes.... The final level—prudential in character—is for the district court, in its discretion, to weigh various factors bearing on the appropriateness of hearing a pendent claim.

*Ambromovage v. United Mine Workers of America,* 726 F.2d 972, 989–90 (3d Cir. 1984).

According to defendant, this court should not certify a Rule 23 class on the state LAD claim because Rule 23 will then compel the court to send notice to the class, and in that way plaintiffs will get court notice of a sort I have already denied under the ADEA claim. Defendant argues that to grant plaintiffs court notice in this backhanded way will "manufacture federal jurisdiction" in contravention of part 2 of the *Ambromovage* test. Defendant also appears to argue that plaintiffs are requesting this court to employ Rule 23 on an opt-in basis, in contravention of that rule.

I find defendant's arguments unconvincing. I understand plaintiffs to be requesting class certification on the LAD claim under Rule 23, court notice to all class members to provide them with an opportunity to opt out, and a self-imposed limit on the definition of the LAD class to include only those people who have already joined as class members on the ADEA claim. This request differs in subtle but important ways from defendant's restatement of it. First, plaintiffs do not request that Rule 23 be revoked as an opt-in mechanism. Second, by limiting possible membership on the state LAD claim to people already members of the class under the federal ADEA claim, plaintiffs appear to avoid any possible "pendent party" difficulties. *See, e.g., Aldinger,* 427 U.S. at 14–18, 96 S.Ct. at 2420–22.

As for the notice problem raised by defendant, I note that I am skeptical that the difference in court involvement between Rule 23 notice on the pendent claim and the notice I have authorized on the ADEA claim is properly characterized as a *jurisdictional* difference, such that questions of proper pendent jurisdiction are raised. Nevertheless, I do not believe I need to reach this particular question, because for separate reasons I intend to put off any issue of Rule 23 notice until a time when, if such notice is given at all, it should have no effect whatsoever on the composition of the ADEA class, and therefore should not trouble defendant.

Plaintiffs themselves desire to include no one else in the putative Rule 23 class on count 3 than is already included in the count-one ADEA class. Therefore, there is no analytical need for me to address the issues of class formation and notice on the LAD claim until after the membership in the ADEA class has been finalized. Given that no such need exists, I find it prudent to put off consideration of these issues until after membership in the ADEA class is set, for the following reasons. First, an informed decision on LAD class formation issues can best be reached after the identities of all possible class members are known. Such will be the case after membership in the ADEA class is finalized. Second, confusion among potential class members regarding the differences between opt-in and opt-out choices, and between notice from plaintiffs and notice from the court, can best be avoided by separating in time the ADEA notice and any Rule 23 notice which may eventually be required. I thus contemplate a schedule in which putative class members receive notice of the ADEA claim only, all timely consents are received by the court, the issue of "similar situations" is decided, and only then is the issue of Rule 23 certification on the LAD claim decided and, if certification is granted, the issue of court notice to all Rule 23 class members is considered.

If defendant has any valid argument that Rule 23 notice on a pendent claim is unfair or impermissible when a companion ADEA claim is the subject of a different type of notice, that argument would be based on a concern that the Rule 23 notice might gen-

erate more, or different, plaintiffs than the ADEA notice alone. I believe that the timing which I contemplate here will necessarily avoid any such differences between the ADEA class and any Rule 23 class which might eventually be certified. Thus, I believe that the timing contemplated will assure the validity of each separate act of notice, and of the court's retention of the state-law claim. For these reasons, defendant's motion to deny class certification of the LAD claim on pendent jurisdictional grounds is denied.

### 2. *The State Contract Claim*

Defendant argues that this court should refuse to exercise pendent jurisdiction over count four because the court lacks power to assert that jurisdiction, or alternatively because discretion warrants such refusal. The Magistrate found this argument persuasive.

■ Count four states a claim for the violation of an implied contract of employment, made out in defendant's employment manual, establishing that defendant would fire employees for good cause only. In *Woolley v. Hoffmann–La Roche, Inc.*, 99 N.J. 284, 491 A.2d 1257, *modified*, 101 N.J. 10, 499 A.2d 515 (1985), a case involving the same defendant as in the case at hand, and, according to plaintiffs, the same employment manual, the Supreme Court of New Jersey established the validity in New Jersey law of such claims under a theory of implied employment contracts. Plaintiffs now seek to apply *Woolley* to the employment decisions in this case allegedly based on age discrimination.

Defendant claims first that this court lacks the power to retain count four because it and the federal ADEA claim share no "common nucleus of operative fact." *Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138; *see Ambromovage*, 726 F.2d at 990. The parties agree that this question is to be decided by reference to the pleadings only. *Lentino v. Fringe Employee Plans, Inc.*, 611 F.2d 474, 478–79 (3d Cir.1979).

In this case, plaintiffs' federal ADEA claim turns on the facts of the February 4, 1985 RIF: how the termination and demotion decisions which comprised the Febru-

ary 4, 1985 RIF were made and whether they were affected by discriminatory intent or effect. The state contract claim turns on the same facts precisely, plus whatever additional facts are necessary to establish the exact contents of the employee manual/contract which applied to each plaintiff. See plaintiffs' amended complaint at paragraphs 24–30. I have no difficulty concluding that the ADEA claim and the state contract claim share a nucleus of operative fact sufficiently common to establish this court's jurisdictional power over the contract claim. *See, e.g., Studint v. La Salle Ice Cream Co.*, 623 F.Supp. 232, 234 (E.D. N.Y.1985) federal ADEA claim plus, *inter alia*, a state-law claim based on an employment contract); *Placos v. Cosmair, Inc.*, 517 F.Supp. 1287, 1289 (S.D.N.Y.1981) (federal ADEA claims plus, *inter alia*, state-law claim based on employment contracts); *Rechsteiner v. Madison Fund, Inc.*, 75 F.R.D. 499, 506 (D.Del.1977) (federal ADEA claim plus, *inter alia*, state-law claim based on alleged oral employment contract). I find the cases cited by defendant in support of their argument that no power exists to be either readily distinguishable on their facts, *see, e.g., PAAC v. Rizzo*, 502 F.2d 306, 307 (3d Cir.1974), *cert. denied*, 419 U.S. 1108, 95 S.Ct. 780, 42 L.Ed.2d 804 (1985); *Hales v. Winn–Dixie Stores, Inc.*, 500 F.2d 836 (4th Cir.1974), or unduly restrictive in their application of the "common nucleus" test, *see, e.g., Mason v. Richmond Motor Co.*, 625 F.Supp. 883 (E.D.Va.1986); *Watkins v. Milliken & Co.*, 613 F.Supp. 408 (W.D.N.C.1984).

■ Defendant claims second that even if this court retains jurisdictional power over count four, it should decline to exercise that power for discretionary reasons. According to *Gibbs*, the discretion to decline an exercise of pendent jurisdiction involves "considerations of judicial economy, convenience, and fairness to litigants," weighted by such concerns as the avoidance of "[n]eedless decisions of state law," the avoidance of federal adjudications in cases where "state issues substantially predominate," and the avoidance of "the likelihood of jury confusion in treating diver-

gent legal theories of relief." 383 U.S. at 726–27, 86 S.Ct. at 1139. *See Ambromovage,* 726 F.2d at 990–91 and note 53.

In the case at hand, it is quite clear to me that considerations of economy, convenience, and fairness all militate strongly in favor of keeping count four in this case. Plaintiffs seek to prove in part that the way in which they were fired or demoted was infected with age discrimination, in violation of federal statutes and private employment contracts. Defendant must put forth persuasive reasons indeed why I should exercise my discretion so as to bifurcate plaintiffs' contractual age discrimination claim from plaintiffs' federal statutory age discrimination claim, and force plaintiffs to present their basic age discrimination allegations twice, in two separate actions.

Defendant has failed to produce such reasons. I see no great danger that the retention of count four will damage federal-state comity through "needless" state-law decisions, *see Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139. *Woolley* itself established the innovative principle that employee manuals can constitute enforceable employment contracts; what remains for courts in cases such as the one at hand is the task of applying settled state contract law to this new type of contract. Contrast *Grubb v. W.A. Foote Memorial Hospital, Inc.,* 741 F.2d 1486, 1500 (6th Cir.1984) (finding "new state-law principles" or "novel" applications of old principles to be at stake); *Watkins,* 613 F.Supp. at 422 (neither state legislature nor state courts had yet recognized "implied contract" exception to at-will employment).

Nor do I see much of a threat of jury confusion. *Woolley* itself notes that issues concerning contract existence and interpretation may be for the court only. 99 N.J. at 307 and note 13, 491 A.2d 1257. And should issues on the contract claim require jury attention, any confusion which threatens to arise can be dealt with through jury instructions, the use of verdict interrogatories, or division of the trial into separate segments. *See, e.g., Benedetto v. Pepsi Cola Bottling Group,* Civil No. 86–2557,

slip op. at 7 (D.N.J. January 5, 1987); *Placos,* 517 F.Supp. at 1289.

Nor do I discern any hint that state law will predominate in this action. The gravamen of plaintiffs' claims is age discrimination in the Operation Turnabout RIF. This is, of course, the heart of plaintiffs' federal claim. Plaintiffs claim a broad array of damages and equitable relief under the ADEA; the only remedies they seek which are peculiar to count four are punitive damages for shame and emotional distress. *See Rogers v. Exxon Research & Engineering Co.,* 550 F.2d 834 (3d Cir.1977), *cert. denied,* 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978). Whatever state-law contract issues do ultimately arise, I simply cannot foresee them predominating at either the liability or damages phases of this case.

For all these reasons, I refuse to employ my discretion to decline jurisdiction over count four. *See* generally *Lusardi,* 99 F.R.D. at 93–94; *Sussman,* 90 F.R.D. at 690.

## VI. CLASS CERTIFICATION AND THE STATE–LAW CLAIMS

I have earlier discussed how any Rule 23 class certification decision on count three is to be put off until after the composition of the count one class is finalized. For the same reasons, any Rule 23 class certification decision on count four should be put off to the same time.

## VII. DISCOVERY

Discovery for plaintiffs has been stayed almost since the outset of this action, and has remained so for more than two years. As pointed out previously, defendant has had three months of discovery on the issue of the validity of the prior consents, and no other discovery. Why a stay of any length, for either side, was ever appropriate is wholly unclear to me. Plaintiffs now apply to me for an order that discovery may go forward. If this application brings the stay before me on appeal from the Magistrate, I vacate it as clearly erroneous and contrary to law. If the ap-

plication is a new motion, made to me in the first instance, to allow discovery now that the pending motions are resolved, it is granted.

The parties may immediately begin any discovery now permitted by the federal and local rules. The parties deserve, if nothing else, a chance to test the strength of plaintiffs' claims and defendant's defenses through the mechanisms of discovery. The parties shall be ordered to report to my current Magistrate, the Hon. Stanley R. Chesler, at his earliest convenience, so that scheduling orders may be drawn and he may impose whatever pre-trial regulations he may see fit to impose, including expedited discovery, which are not in conflict with my findings today and which in his discretion follow the spirit of the projected pretrial schedule I have included as Appendix B of this opinion. In particular, the Magistrate may wish to consider expediting whatever discovery plaintiffs may need to conduct before resubmitting to me their request for the posting and publication of notice on defendant's premises. In no event shall my discovery findings in this part of the opinion supercede my earlier command that defendant proceed forthwith to comply with plaintiffs' request for discovery of the names and addresses of putative count-one class members.

## VII. CONCLUSION

In conclusion, I have considered all of Magistrate Haneke's recommendations and his discovery stay. I have for the most part rejected or modified his recommendations, and have ordered discovery to resume immediately. Specifically, I deny defendant's motion for dismissal of or summary judgment on plaintiffs' disparate impact claims, I grant plaintiffs' request for discovery against defendant of the names and addresses of putative count-one class members; I grant plaintiffs' request for mailing notice to newly discovered class members, so long as the notice comes from plaintiffs or plaintiffs' counsel and bears the court's authorization; and I deny plaintiffs' request for posting and publishing notice on defendant's premises because that request is too vague. I put off any

final decision on whether plaintiffs and those they wish to represent are similarly situated. I deny defendant's motion to invalidate the prior consents to join and send out corrective notice. I deny defendant's motions to refuse jurisdiction over counts three and four. I put off consideration of Rule 23 class certification on counts three and four. General discovery shall resume immediately, the parties shall see Magistrate Chesler at his earliest convenience for general pre-trial instructions, and defendant shall produce the requested names and addresses forthwith. I attach two appendices to this opinion. Appendix A contains the notice for mailing and Appendix B contains a projected pre-trial schedule embodying the effect of my decision today.

## APPENDIX A

### *Notice for Mailing*
### NOTICE

#### (Date)

FROM: (Plaintiffs or Plaintiffs' Counsel)

TO: Present and former employees of Hoffman–LaRoche, Inc. ("Roche" or "HLR"), between the ages of 40 to 70 who have been involuntarily terminated, laid off or demoted from employment pursuant to the staff reduction program of Roche implemented on or about February 4, 1985.

RE: Age Discrimination Law Suit filed against Roche

(1) INTRODUCTION. The purpose of this Notice is to inform you of the existence of a class action law suit in which you may be a member of the Plaintiff class, to advise you of how your rights may be affected by this suit, and to instruct you on the procedure for participating in this suit if you so desire.

(2) DESCRIPTION OF THE LAW SUIT. On May 1, 1985, Richard Sperling, Frederick Hemsley, and Joseph Zelauskas brought this suit against Roche in the federal District Court for the District of New Jersey, alleging that they were discriminated against and involuntarily terminated

from employment because of their age, in violation of the federal Age Discrimination and Employment Act ("ADEA") and the New Jersey Law Against Discrimination ("NJLAD"). In particular, the plaintiffs have contended that a Roche staff reduction program instituted in February, 1985 discriminated, in the selection for termination and demotion, against certain employees over the age of 40. Plaintiffs seek back pay, forward pay, lost pension and other fringe benefits, money damages and, where appropriate, reinstatement to their former positions. Plaintiffs have also asserted claims for breach of employment contracts under New Jersey law. The law suit, which Roche is opposing, is proceeding through pre-trial stages.

(3) COMPOSITION OF THE AGE DISCRIMINATION CLASS. The three named plaintiffs seek to sue on behalf of themselves and also on behalf of other employees with whom they are similarly situated. Specifically, the plaintiffs seek to sue on behalf of any and all employees who were, at any time from on or about January 1, 1985 to date:

(a) over 40 but less than 70 years of age;

(b) employed by HLR at any of its locations nationwide in a non-union position or a position not subject to a collective bargaining agreement;

(c)(1) if an exempt employee (i) with an HLR salary grade level of 10 or above, or (ii) if below an HLR salary grade level of 10, with a base annual salary at or greater than the midpoint of such salary grade level, or (2) if a non-exempt employee, with a base annual salary of at least $20,000;

(d) involuntarily discharged, laid off, terminated, downgraded or demoted from employment by HLR:

(e) subjected to such adverse employment actions as described in (d) pursuant to or in connection with a staff reduction action and/or layoff implemented by HLR on or about February 4, 1985.

(4) YOUR RIGHT TO PARTICIPATE IN THIS SUIT. If you fit the definition above, you may join this suit (that is, you may "opt in") provided that you cause to be filed a "Consent to Join" in the very near future. Consent to Join forms and information regarding the specific filing deadline are available from the sources listed at the end of this notice.

Your eligibility to file a Consent to Join is not affected by your previous filing or failure to file any charge or complaint of age discrimination with any federal, state or local agency.

Your eligibility to file a Consent to Join is not affected by any statute of limitations. Even if you file a Consent to Join, however, your continued right to participate in this suit may depend upon a later decision by the District Court that no statute of limitations has run against you. In addition, your continued right to participate may depend upon a later decision that you and the plaintiffs are similarly situated, in accordance with federal law.

(5) EFFECT OF JOINING THIS SUIT. If you choose to join this suit, you will be bound by the judgment whether it is favorable or unfavorable. While the suit is proceeding you may be required to provide information, sit for depositions, and testify in court. You will not be required to pay attorneys' fees directly. The plaintiffs' attorneys will receive a part of any money judgment entered in favor of the class.

(6) NO LEGAL EFFECT IN NOT JOINING THIS SUIT. If you choose not to join this suit, you will not be affected by the judgment, favorable or unfavorable. If you choose not to join this suit, you are free to file your own law suit.

(7) YOUR LEGAL REPRESENTATION IF YOU JOIN. If you choose to join this suit, your interest will be represented by the named plaintiffs through their attorneys, as counsel for the class. The counsel for the class are:

Leonard N. Flamm, Esq.
Hockert & Flamm
880 Third Avenue
New York, New York 10022
(212) 752-3380

Ben H. Becker, Esq.
Schwartz, Tobia & Stanziale
22 Crestmont Road
Montclair, New Jersey 07042
(201) 746-6000

(8) FURTHER INFORMATION. Further information about this suit, the dead-

line for filing a Consent to Join, and the availability of Consent to Join forms can be obtained by

(Plaintiffs provide instructions)

Signed,

(Plaintiffs or Plaintiffs' Counsel)

THIS NOTICE AND ITS CONTENTS HAS BEEN AUTHORIZED BY THE FEDERAL DISTRICT COURT, HON. HAROLD A. ACKERMAN, JUDGE. THE COURT HAS TAKEN NO POSITION REGARDING THE MERITS OF THE PLAINTIFFS' CLAIMS OR OF ROCHE'S DEFENSES.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF
NEW JERSEY

RICHARD SPERLING, FREDERICK HEMSLEY: and JOSEPH ZELAUSKAS, individually and on behalf of others similarly situated, Plaintiffs,

v.

HOFFMAN–LA ROCHE, INC.,
Defendant.

Civil Action No. 85–2138

CONSENT TO JOIN

(Pursuant to 29 USC § 216(b))

TO: THE CLERK OF THE COURT AND TO EACH PARTY AND COUNSEL OF RECORD:

STATE OF :
 ss.:
COUNTY OF :

_____, being duly sworn, deposes and
(name)
says:

1. I reside at _____. I was born on _____, and was over the age of forty (40) years on _____, the date on which (check either a or b):

____ a. My employment with Hoffmann-La-Roche ("Roche") was involuntarily terminated or I was laid off.

____ b. I was demoted to a lesser position at Roche. (Check either 2 or 3):

____ 2. As an exempt employee, by base salary level at the time of my termination was Grade _____. If Grade 10 or under, my actual salary _____ (was, was not) at or greater than the midpoint of the Grade.

____ 3. As a non-exempt employee, my base pay at termination was at least $20,000 per annum.

4. I understand this suit is being brought under the federal Age Discrimination in Employment Act. I have read and I understand the notice accompanying this Consent. As a former employee of Roche, I hereby consent, agree and opt-in to become a party plaintiff herein and to be bound by any settlement of this action or adjudication of the Court.

5. I hereby authorize the named plaintiffs, or plaintiffs' counsel of record, to file this Consent with the Clerk of the Court.

6. I hereby further authorize the named plaintiffs herein to retain their counsel of record or select new counsel, as they shall determine in their discreton, and I hereby further authorize such counsel to make such further decisions with respect to the conduct and handling of this action, including the settlement thereof, as they deem appropriate or necessary.

_____
(full signature)

_____
(type or print name)

Sworn and subscribed to before me this day of , 1987.

_____

RETURN FOR FILING BEFORE (deadline date in notice)

TO: (Plaintiffs provide instructions.)

## APPENDIX B

### Projected Pre–Trial Schedule

*Immediately:*

(1) Plaintiffs given discovery of names and addresses.

(2) Resumption of normal discovery by both sides on all issues generally.

*Upon completion of discovery of names and addresses:*

Plaintiffs mail authorized notice, including consent form. Deadline for all remaining consents is 45 days from mailing. Plaintiffs shall certify to court and defendant the date of mailing.

*After deadline for all consents:*

Expedited discovery on "similarly situated" issue, equitable tolling issue. Magistrate Chesler shall, in setting expedited schedule, take note of whatev-

er discovery defendant has already had relevant to the "similarly situated" issue.

*After expedited discovery above:*

Motions to court on "similarly situated" issue, equitable tolling issue, class certification of state-law claims.

*If class certification on state-law claims is granted:*

Mailing of opt-out notice to state-law claim class members.