Jules LUSARDI, et al.,

v.

**XEROX CORPORATION.**

Civ. A. No. 83–809.

United States District Court,
D. New Jersey.

Aug. 30, 1983.

Robert H. Jaffe, Jaffe & Schlesinger, Springfield, N.J., Steven I. Adler, Cole, Geaney, Yammer & Byrne, Patterson, N.J. for plaintiffs.

Carmine A. Iannaccone, Stryker, Tams & Dill, Newark, N.J., for defendant.

## OPINION

STERN, District Judge.

This is an action under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–34, for injunctive and monetary relief brought by four named plaintiffs on behalf of a class based upon an allegedly violative age-biased corporate policy imple-

mented by defendant Xerox Corporation on a nationwide basis.[1] In addition to the claims brought on behalf of the class, the four named plaintiffs individually seek damages based on pendent state law theories of contract and malicious discharge from employment. Defendant now moves to dismiss the complaint, or portions thereof, for these reasons: (1) plaintiffs' failure to commence proceedings with the state deferral agency; (2) the inapplicability of Rule 23, Fed.R.Civ.P., to class actions under the ADEA; and (3) the inappropriateness of considering the pendent claims in this action. Plaintiffs have concurrently moved for class certification under Rule 23, Fed.R. Civ.P., or in the alternative, under 29 U.S.C. § 216(b). We find that plaintiffs sufficiently commenced proceedings with the relevant state agency to allow us to maintain jurisdiction, and that a class may be certified under 29 U.S.C. § 216(b), but not under Rule 23. We will defer decision on the pendent claims pending determination of which state law is to apply.

### 1. Commencement of State Proceedings

The ADEA provides that in those states where a "deferral agency" exists, this agency must be given an opportunity to hear the charge of age discrimination before the federal action can proceed. 29 U.S.C. § 633(b) (no suit may be brought before the expiration of sixty days after the commencement of state proceedings unless such proceedings have been earlier terminated). Defendant incorrectly argues that in this case no plaintiff commenced a state action.[2]

---

1. Plaintiffs seek recovery based on a disparate impact theory, Br. for Pls. at 3, a theory whose availability in the context of the ADEA is undecided in this circuit. *See Massarsky v. General Motors Corp.*, 706 F.2d 111 (3d Cir.), *cert. denied* ── U.S. ──, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983); *cf. Geller v. Markham,* 635 F.2d 1027 (3d Cir.1980) (disparate impact theory recognized under the ADEA), *cert. denied,* 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981). We need not resolve this issue at the present stage of the proceedings.

2. Defendant's alternative characterization of this issue as plaintiffs' failure to "exhaust"

state remedies reflects some misunderstanding of the ADEA's operation, for as the Supreme Court clearly set out in *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979), the ADEA does not establish an exhaustion requirement. Rather, the ADEA merely requires that state proceedings be "commenced", and that the state be given at least sixty days to act on the charges before further steps are taken in the federal arena. Once the sixty day period has elapsed, the action may be pursued administratively by the EEOC or in federal court, even if the state proceedings have not been completed.

All four named plaintiffs received termination letters on November 6, 1981, as part of an involuntary reduction in force by Xerox. In January, 1982, each filed a charge of age discrimination with the Newark office of the Equal Employment Opportunity Commission (EEOC), which charges were forwarded by the Newark office to the Northeast Area Office of the EEOC in Boston for processing. Some time thereafter, the Boston EEOC sent these four charges to the Connecticut Commission on Human Rights and Opportunities (CCHRO), the state deferral agency in Connecticut.[3] *See* 29 C.F.R. § 1601.74 (1982). On April 1, 1982, all four named plaintiffs signed "Request for Waiver of Jurisdiction" forms supplied by the CCHRO, in which each requested that the CCHRO waive jurisdiction of his complaint against Xerox. At this point the charges went back to the EEOC, which conducted an investigation and attempted informal conciliation. The EEOC reported to plaintiffs in October, 1982, that attempts at conciliation had failed. Plaintiffs subsequently filed suit in this court in March, 1983.

■ State proceedings were "commenced" within the meaning of 29 U.S.C. § 633(b) when the Boston EEOC deferred plaintiffs' charges to the CCHRO. That Connecticut's deferral agency allowed for waiver of jurisdiction does not detract from the fact that the state agency was presented with the charges and given an opportunity to hear them. Once these state proceedings were terminated, plaintiffs were entitled to pursue their remedies in a federal forum.[4] We therefore find that this case is properly before us.[5]

3. That Connecticut was the chosen deferral state is presumably explained by the fact that this is the location of Xerox corporate headquarters and was listed as such on the charges of all four named plaintiffs.

4. Apparently as a safety measure, the four named plaintiffs resubmitted their charges to state agencies on June 10, 1983. Affidavits submitted subsequently indicate that the state agencies rejected the charges as time barred. Since we find that plaintiffs properly commenced state proceedings prior to this activity, we do not comment on whether these filings

## 2. Class Certification

■ Plaintiffs initially seek certification of a class under Rule 23(b)(2) or (b)(3), Fed.R.Civ.P.; defendant moves to dismiss Count One of the Complaint on the grounds that a Rule 23 class action may not be maintained in an ADEA action. With the support of unambiguous statutory language and unanimous appellate court interpretation, we hold that a class cannot be certified pursuant to Rule 23 on an ADEA claim.

The ADEA explicitly adopts specific procedural rules from the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–19. As stated in § 7(b) of the ADEA:

> The provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures provided in sections 211(b), 216 (except for subsection (a) thereof), and 217 of this title, and subsection (c) of this section . . . .

29 U.S.C. § 626(b). Section 16(b) of the FLSA, 29 U.S.C. § 216(b), provides that an employee may bring an action to recover under the FLSA on behalf of a larger class of employees "similarly situated", subject to the requirement that a person file written consent with the court in order to become part of the class. Section 16(b) states in relevant part:

> An action to recover [under the FLSA] . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees. similarly situated. No employee shall be a party plaintiff to any such action unless

would have been sufficient "commencement" in the absence of earlier events.

5. While the issue is not presently before us, we note that courts have generally held that non-named plaintiffs who subsequently "opt in" to a class action under 29 U.S.C. §§ 626(b) and 216(b), *see* part 2, *infra*, need not have presented their claims to the state agency if the named plaintiffs have done so. *See, e.g., Mistretta v. Sandia Corp.,* 639 F.2d 588, 593 (10th Cir.1980); *Bean v. Crocker National Bank,* 600 F.2d 754 (9th Cir.1979).

he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought
. . . .

29 U.S.C. § 216(b). Thus, in contrast to the "opt out" class action provided by Rule 23, the FLSA describes an "opt in" class action—no one is a member of the class until written consent is given to the court.

There can be no doubt that the express language of § 7(b) of the ADEA selects the class action mechanism defined in § 16(b) of the FLSA, not that set forth in Rule 23. This has been the conclusion of every circuit court that has faced the question of whether the ADEA incorporates the FLSA class action procedure. *See EEOC v. Gilbarco, Inc.,* 615 F.2d 985 (4th Cir.1980); *Bean v. Crocker National Bank,* 600 F.2d 754 (9th Cir.1979); *LaChapelle v. Owens-Illinois, Inc.,* 513 F.2d 286 (5th Cir.1975); *see also Schmidt v. Fuller Brush Co.,* 527 F.2d 532 (8th Cir.1975) (decided under FLSA, but relying on reasoning of *LaChapelle*); *cf. Lorillard v. Pons,* 434 U.S. 575, 580, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978) (in finding that jury trial right exists under ADEA, Court emphasizes Congress' directive that the ADEA be enforced in accordance with the powers, remedies and procedures of the FLSA). Virtually every district court faced with this problem has resolved the matter identically. *See, e.g., Allen v. Marshall Field & Co.,* 93 F.R.D. 438 (N.D.Ill.1982); *EEOC v. Chrysler Corp.,* 546 F.Supp. 54 (E.D.Mich.1982); *Sussman v. Vornado, Inc.,* 90 F.R.D. 680 (D.N.J.1981); *see generally* Lipschultz, The Class Action Suit Under the Age Discrimination in Employment Act: Current Status, Controversies, and Suggested Clarifications, 32 Hastings L.R. 1377, 1383–85 & n. 56 (1981) (summarizing district court cases); *but see Blankenship v. Ralston Purina Co.,* 62 F.R.D. 35 (N.D.Ga. 1973) (Rule 23 applicable to ADEA suit; effectively overruled by *LaChapelle*); *Bish-*

*op v. Jelleff Associates, Inc.,* 4 Fair Empl. Prac.Cas. (BNA) 1262 (D.D.C.1972) (class certified under Rule 23 after all plaintiffs had filed consent with the court; no notice given to those not "opting in" and no opportunity to "opt out").

In the face of this immense authority to the contrary, plaintiffs argue that the FLSA "opt in" class action is not the exclusive class mechanism under the ADEA, and that Rule 23 class actions may be certified under the Act. Making abstruse reference to legislative history only marginally related to the issue at hand, plaintiffs suggest that the sole purpose of the ADEA's incorporation of § 16(b) of the FLSA was "to avoid establishing a new bureaucracy for agency type hearings, *not* to provide a private right of action for which separate provision was made in subsection 7(c) [§ 626(c)] of the ADEA." [6] Brief of Pls. at 19. Plaintiffs claim that unless § 16(b) is so interpreted in the context of ADEA enforcement provisions, § 7(b) would have to be seen as creating a "redundant", but more restrictive, cause of action as compared to that created in § 7(c).

Examination of the relevant statutory provisions brings the Court to a different conclusion. There is nothing necessarily "redundant" in § 626(b) and (c): Section 626(c) creates a private cause of action under the ADEA, while § 626(b) describes the "powers, remedies and procedures" for enforcement of that cause of action, as well as for actions brought by the Secretary. As pertains to the availability of class actions under the ADEA, the adoption of § 16(b) by § 7(b) does not create a separate cause of action, but simply incorporates a procedural framework. Had Congress intended that Rule 23 class actions as well as § 16(b) class actions be available to ADEA grievants, there is not doubt that it would have so provided. In the absence of such a provision, however, and in light of Congress'

**6.** Section 7(c)(1) of the ADEA states:
   Any person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter: *Provided,* that the right of any person to bring such

action shall terminate upon the commencement of an action by the Secretary to enforce the right of such employee under this chapter.
29 U.S.C. § 626(c)(1).

clear expression of an alternative class action apparatus, we decline to certify this class under the terms other than set forth in the statute.

Plaintiffs do seek certification under § 7(b) and § 16(b) as an alternative to Rule 23 class certification, and we hold that under this authority a class action can go forward.[7] A more difficult question, however, is whether written notice to potential "opt in" class members is authorized under § 16(b). Recognizing that the statute itself is silent on the matter of notice, and noting a split among the circuit courts, *compare Kinney Shoe Corp. v. Vorhes*, 564 F.2d 859 (9th Cir.1977) (notice inappropriate) *with Woods v. New York Life Insurance Co.*, 686 F.2d 578 (7th Cir.1982) (notice appropriate); *Braunstein v. Eastern Photographic Laboratories, Inc.*, 600 F.2d 335 (2d Cir.1978) (same), *cert. denied*, 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1046 (1979); *cf. Haynes v. Singer Co.*, 696 F.2d 884 (11th Cir.1983) (refusing to take a position on the record before it), we now decide that notice to putative class members in an ADEA class action is consistent with the purposes of the Act.

The opponents of notice to "opt in" class members raise three arguments in support of their position. First is the argument that notice is a feature specific to Rule 23, which Congress, as demonstrated by its silence, did not choose to include as a provision of § 16(b). Second is the argument that due process concerns underlying the notice requirement in a Rule 23 "opt out" class action are absent in the § 16(b) context since only those persons who affirmatively "opt in" are bound by the res judicata effects of any decision. Third is the argument that authorizing notice only serves barratrous interests by soliciting plaintiffs who would otherwise not be stirred to join a lawsuit.

We find none of these arguments compelling. First, as reasoned in *Braunstein,* Congress' silence on the issue of notice should not be considered dispositive given the broad remedial purposes of the Fair Labor Standards Act, concerns equally applicable to the ADEA. In providing content to the slimly defined § 16(b) class action, we cannot ignore the simple truth that the effectiveness of class enforcement of the ADEA would be vastly diminished if named plaintiffs were not allowed to notify those who may be similarly situated of their right to be included in the class through written consent. The meaningfulness of the ADEA class remedy should not depend on the vagaries of rumor and gossip, through which certain fortunate grievants might happen to hear of a pending suit. Second, while due process may not require notice in the context of § 16(b), neither do we see it as prohibiting notice where the goals of the ADEA can thereby be best effectuated. Third, the concern that court-authorized notice amounts to barratry is silly—as pointed out in *Braunstein,* avoidance of multiple lawsuits through class actions is markedly different than the unabashed solicitation of lawsuits for private pecuniary gain. We will allow notice to be sent to putative "similarly situated" class members.[8]

### 3. Pendent State Law Claims

The second and third counts of the complaint state claims based on state law. Count 2 seeks relief on a contract theory for defendant's alleged breach of promises concerning employment made in an employee handbook entitled "Xerox and You." Count 3 requests damages for malicious and/or wrongful discharge resulting from alleged altering of employee records in combination with the unlawful terminations.

---

**7.** Plaintiffs' complaint seeks relief under the ADEA only on behalf of a Rule 23 class. As indicated by the Court at oral argument on July 11, 1983, plaintiffs will have to amend their complaint to provide for class claims pursuant to 29 U.S.C. §§ 626(b) and 216(b).

**8.** At oral argument on July 11, 1983, the Court set up a 45 day discovery period for the purpose of establishing the number of persons similarly situated to named plaintiffs. Once this discovery is complete, plaintiffs may move to certify a specifically described class to whom notice will ultimately be sent.

Essentially conceding that the claims in these two counts and that in the federal Count 1 derive from a "common nucleus of operative fact", defendant argues that under *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) concerns of judicial economy, convenience and fairness to the litigants warrant dismissal of the pendent claims in this case. More specifically, defendant urges dismissal on two grounds: first, that the various state laws on which relief may be sought are either unsettled or in conflict, and, as a consequence, a jury will be unnecessarily confused if the state claims are appended to the larger ADEA class claim;[9] and second, that the relief sought under the state claims, particularly damages for pain and suffering and punitive damages, being unavailable under the ADEA, should be disallowed in a claim pendent to an ADEA claim.

Plaintiffs admit that the laws of New Jersey, Connecticut and New York are dissimilar in the areas relevant to this suit. Letter Br. of Pls. of June 27, 1983 at 3, and we find that this lack of accord could cause a jury unjustified confusion. Plaintiffs state, however, that, "[i]t will only be after discovery is commenced that the named plaintiffs will be able to specify which of the three possible states should be the locus of the pendent claim." *Id.* We will defer our decision on whether the pendent claims should be dismissed until a moment when the issue of confusion can be better assessed. In coming to this decision, we have considered whether delay in resolution of this issue will cause any inconvenience to the parties or in any way encumber the litigation. We conclude it will not.

■ Regarding defendant's argument that because dissimilar relief is available under the federal and state laws the pendent claims should be dismissed, we are unconvinced. While we recognize that this argument has found favor with some

courts, *e.g., Deutsch v. Carl Zeiss, Inc.,* 529 F.Supp. 215 (S.D.N.Y.1981), we do not believe that allowing damages under a pendent state law claim, otherwise unavailable had the federal claim been brought alone, in any way subverts the federal remedial scheme. Put differently, we cannot see how the federal scheme will be served by requiring plaintiffs to bring their federal and state law claims in two actions rather than one. Nothing in this case suggests that the pendent claims were brought in order to frustrate the ADEA's enforcement mechanism, nor is there any indication that if we later allow the pendent claims to go forward that the ADEA will in any sense be undermined. If under *Gibbs* the federal and state claims are properly within the court's jurisdiction, the mere fact that state law remedies are different than the federal law remedies cannot be a ground for dismissal.

In sum, we hold that plaintiffs' adequately commenced state proceedings under the ADEA and that their claims are now properly before the Court, that a class may be certified pursuant to § 7(b) of the ADEA, but not under Rule 23, and that decision on the dismissal of plaintiffs' pendent state law claims will be reserved for a time when those issues are better clarified.

For the reasons set forth in this Court's letter-opinion filed herewith,

It is on this 30 day of August, 1983,

ORDERED that defendant's motion to dismiss the complaint for plaintiffs' failure to commence state proceedings be, and it hereby is, denied; and it is further

ORDERED that defendant's motion to dismiss those portions of the complaint seeking relief for a Rule 23, Fed.R.Civ.P. class be, and it hereby is, granted with leave for plaintiffs to amend their complaint to assert class claims pursuant to 29

---

**9.** The present uncertainty as to which state laws would apply to each of named plaintiff's state law claims stems from the fact that two of the named plaintiffs worked in New Jersey (Lusardi and Marr), and two worked in New York (Hill and Weiss). Furthermore, two of the plaintiffs reside in New Jersey (Lusardi and Hill), and two reside in New York (Marr and Weiss). Finally, Xerox's corporate headquarters is in Connecticut.

U.S.C. §§ 626(b) and 216(b); and it is further

ORDERED that defendant's motion to dismiss the pendent state law claims be, and it hereby is, denied with leave to renew the motion at an appropriate time in the future.