**Elliot L. ROBINSON and Harvey Levine, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**SIZES UNLIMITED, INC., and The Limited, Inc., Defendants.**

**Civ. A. No. 87–645(AMW).**

United States District Court, D. New Jersey.

May 4, 1988.

---

Davis, Barnhill & Galland by Paul Strauss, Chicago, Ill. and Ball, Livingston & Tykulsker by David Tykulsker, Newark, N.J., for plaintiffs.

Apruzzese, McDermott, Mastro & Murphy by Richard Mariani, Springfield, N.J. and Schwartz, Kelm, Warren & Rubenstein by Douglas L. Williams, and Julia A. Davis, Columbus, Ohio, for defendants.

## OPINION

WOLIN, District Judge.

This age discrimination case arises from the termination of the employment of plaintiffs Elliot Robinson and Harvey Levine, two former employees of Sizes Unlimited, Inc. ("Sizes Unlimited").[1] Plaintiffs originally filed this action against Sizes Unlimited and its parent corporation, The Limited, Inc. (collectively, the defendants) in state court, whereupon defendants removed to federal court. Defendants then moved to dismiss the complaint on various grounds, all of which were denied without prejudice by Judge Ackerman. *See* Order filed September 29, 1987 (denying, without prejudice, defendants' motions to dismiss). Subsequently, defendants now bring a motion to dismiss plaintiffs' pendent state law claims. For the following reasons defendants' motion is denied in part and granted in part.

## I. BACKGROUND

The facts are simple. The substance of plaintiffs' allegation is that they were fired as part of a campaign to terminate the older employees of Sizes Unlimited which was instigated by its parent, The Limited, Inc.[2] From August, 1983 through December, 1984, Elliot Robinson was employed as a store manager of Sizes Unlimited. At the time of his termination Robinson was fifty-two years old. Similarly, from October, 1981 through February, 1985, Harvey Levine was employed as a district manager for Sizes Unlimited; he was forty-three at the time of his termination.

As already noted, plaintiffs filed a four count complaint in the Superior Court of Bergen County, New Jersey on December 24, 1986 which was removed to federal court on February 20, 1987. Count III of the complaint is based on the Federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.;* this count is brought on behalf of plaintiffs and all others similarly situated. Counts I and II are based, respectively, on the New Jersey Law Against Discrimination

---

1. Sizes Unlimited is a retail chain store selling clothes to large-sized women. It is wholly owned by The Limited, Inc., a holding company that operates several women's apparel chains, including Lane Bryant, Lerner's, and The Limited's flagship subsidiary, The Limited Stores. Sizes Unlimited was acquired by The Limited in late 1982.

2. For example, plaintiffs note that in its 1978 Annual Report, The Limited, Inc. stated:

> The business of The Limited is fashion. Limited stores specialize in the sale of medium-priced fashion apparel tailored to the tastes and lifestyles of women 16 to 35 years of age.
>
> \* \* \* \* \* \*
>
> The sales associates of The Limited are young, fashion-conscious women. They are enthusiastic and well trained in helping our customers put together their own special look.

Exhibit G to Plaintiff's Memorandum in Opposition.

("NJLAD"), N.J.Stat.Ann. 10:5–1 *et seq.*, and the New Jersey Constitution, Article I, paragraph 1. These two counts are also brought as class actions. In Count IV, plaintiff Elliot Robinson alleges an individual cause of action under the NJLAD, N.J. Stat.Ann. 10:5–4.1, for discrimination against the handicapped.[3]

It is clear that with respect to plaintiffs' ADEA claims this court has subject matter jurisdiction because these claims present a federal question pursuant to 28 U.S.C. § 1331. As to plaintiffs' other claims, however, defendants note that they are based on alleged violations of New Jersey state law and that jurisdiction only exists if this court exercises its powers of pendent jurisdiction. *See Ambromovage v. United Mine Workers of America*, 726 F.2d 972, 989 n. 48 (3d Cir.1984) (" 'Pendent jurisdiction' generally refers to a federal court's jurisdiction over the plaintiffs' nonfederal claims, as long as there is a federal claim which gives the court jurisdiction."). In the instant case defendants assert that there are three grounds which render pendent jurisdiction inapplicable: (1) this court does not have the power to exercise pendent jurisdiction over a state law age discrimination "opt-out" class action brought in conjunction with a federal ADEA "opt-in" class action; (2) pendent jurisdiction would cause this court to needlessly decide novel issues of state law; and (3) there would be jury confusion created with respect to the appropriate remedies applied to plaintiffs' proposed combination of federal and state age discrimination class actions. Plaintiffs respond that not only does this court have the power to exercise pendent jurisdiction, but that the exercise of jurisdiction over the state law claims is particularly appropriate in the instant action.

## II. DISCUSSION

A. Standards for Exercising Pendent Jurisdiction.

This court may exercise its powers of pendent jurisdiction only if "[t]he state and federal claims ... derive from a common nucleus of operative fact." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). The mere existence of the power of pendent jurisdiction does not, however, mandate its use; district courts are given discretion when balancing the considerations of "judicial economy, convenience and fairness to litigants" in determining whether to invoke pendent jurisdiction. *See Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139 (noting that "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right"). In other words, this court must determine whether "the state issues substantially predominate," thereby inviting their dismissal, or if instead, "the state claim is so closely tied to questions of federal policy that the argument for the exercise of pendent jurisdiction is particularly strong." *Id.* at 726–727, 86 S.Ct. at 1139.

In applying the test for pendent jurisdiction as outlined in *Gibbs*, the Third Circuit has adopted a "three-tiered" analysis in which a district court must determine whether:

(1) a common nucleus of operative fact exists between the state claim at issue and the accompanying federal claim;

(2) the exercise of jurisdiction would violate existing federal policy; and

(3) in weighing various prudential factors, it is appropriate to hear the pendent state claim.

*Ambromovage, supra*, 726 F.2d at 989–90. The first and second prongs of this analysis address the court's power to entertain the state law claims under the Constitution and other relevant federal statutes; the third prong, discretionary in its application, is directed at the propriety of the exercise of pendent jurisdiction.

B. Application of the *Ambromovage* Test to the Pendent State Law Class Action Claims.

(1) *Frustration of Federal Policy.* In the instant action plaintiffs will seek class

---

**3.** Robinson alleges that he was terminated while on sick leave to recuperate from a certain back injury because of defendants' impatience with employees who suffered from any physical disability.

certification under both federal and state law.[4] Although Federal Rule of Civil Procedure 23 generally governs class actions in federal court,[5] that rule is not applicable to plaintiffs' ADEA claims. Section 7(b) of the ADEA[6] incorporates the class action provision of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), which provides as follows:

> An action to recover the liability prescribed ... may be maintained against any employer (including a public agency) in any Federal or State Court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*See also Sperling v. Hoffman–La Roche, Inc.,* 118 F.R.D. 392, 399 (D.N.J.1988) (citations omitted) (noting that ADEA class actions must proceed under FLSA and not Fed.R.Civ.P. 23). Therefore, defendants assert that in light of the distinction between ADEA and Rule 23 class action provisions,[7] this court does not have the power to entertain plaintiffs' pendent state law claims under the second prong of the *Ambromovage* test (*i.e.,* the foreclosure of pendent jurisdiction when federal policy would be frustrated).

In other words, defendants maintain that if this court were to join and try plaintiffs' pendent state law opt-out class actions with their federal ADEA opt-in class action, it would nullify the limitations of the opt-in requirement expressly provided for under the ADEA/FLSA by effectively transforming a Section 216(b) class action into a Rule 23 class action. *See Lusardi v. Xerox Corp.,* 99 F.R.D. 89, 91 (D.N.J.1983) (holding that a class cannot be certified pursuant to Rule 23 on an ADEA claim). *See also Pirrone v. North Hotel Associates,* 108 F.R.D. 78, 80 (E.D.Pa.1985) (noting the distinction between § 216(b) opt-in provision as opposed to Rule 23 opt-out provision).

This court acknowledges defendants' legitimate concern that the exercise of pendent jurisdiction over plaintiffs' state law class actions in this case may well have the effect of expanding a federal age discrimination class to individuals who could not otherwise opt into the federal class.[8] This

---

**4.** It is important to note that plaintiffs have not yet sought certification of either the federal or the state class. *See infra* note 9 and accompanying text (discussing order of certification).

**5.** New Jersey class actions are governed by N.J. Civ.Prac. Rule 4:32 which is substantially similar to Fed.R.Civ.P. 23, especially with respect to the prerequisites for certification and the "opt-out" notice provisions. *See infra* note 6 and accompanying text (discussing distinction between "opt-out" and "opt-in" notice provisions).

**6.** Section 7(b) of the ADEA, 29 U.S.C. § 626(b), states in pertinent part:

> The provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures provided in sections 211(b), 216 (except for subsection (a) thereof), and 217 of this title, and subsection (c) of this section....

**7.** In *Sussman v. Vornado, Inc.,* this district noted that:

> There is a fundamental, irreconcilable difference between the class action described by Rule 23 and that provided by [the ADEA as incorporating] FLSA § 16(b). In a Rule 23 proceeding ... each person within the description [of the class] is considered to be a

class member, and, as such, is bound by judgment, whether favorable or unfavorable, unless he has 'opted out' of the suit. Under § 16(b) of FLSA, on the other hand, no person can become a party plaintiff and no person will be bound by or may benefit from judgment unless he has affirmatively 'opted into' the class....

90 F.R.D. 680, 683 n. 7 (D.N.J.1981) (footnote omitted) (quoting *LaChapelle v. Owens–Illinois, Inc.,* 513 F.2d 286, 288 (5th Cir.1975)).

**8.** In *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), the Supreme Court noted:

> [T]his Court has found nothing in Art. III's grant of judicial power which prevented adjudication of the nonfederal portions of the parties' dispute. None of them, however, adverted to the separate question, involved in the instant case, of whether a nonfederal claim could *in turn* be the basis for joining a party over whom no independent federal jurisdiction exists, simply because that claim could be derived from the 'common nucleus of operative fact' giving rise to the dispute between the parties to the federal claim.

*Id.* at 10, 96 S.Ct. at 2418 (emphasis in original). Although *Aldinger* addressed the issue of "pen-

precise issue of " 'manufacture[d] federal jurisdiction' in contravention of Part 2 of the *Ambromovage* test" was recently addressed by Judge Ackerman in *Sperling, supra,* 118 F.R.D. at 412. Judge Ackerman was unconvinced that plaintiffs were seeking to contravene the purposes of the ADEA because:

> I understand plaintiffs to be requesting class certification on the [NJ]LAD claim under Rule 23, court notice to all class members to provide them with an opportunity to opt out, and a self-imposed limit on the definition of the [NJ]LAD class to include only those people who have already joined as class members on the ADEA claim.... [B]y limiting possible membership on the state [NJ]LAD claim to people already members of the class under the federal ADEA claim, plaintiffs appear to avoid any possible 'pendent party' difficulties.

*Id.* (citing *Aldinger,* 427 U.S. at 14–18, 96 S.Ct. at 2420–2422). Thus, by following the example set in *Sperling* and strictly limiting the potential certification of the opt-out class under the pendent state law counts to those plaintiffs who have first opted into the ADEA class pursuant to Section 216(b), this court can effectively eliminate defendants' concerns as to the problem of manufactured jurisdiction over the so-called "pendent plaintiffs." [9]

Moreover, this court finds that a restriction on the certification of any pendent state law class to those already certified under the ADEA will provide the added benefit of separating in time the notice required to be provided under both the federal and state class actions. *See Sperling,* 118 F.R.D. at 412–413 (noting that to avoid any confusion between opt-in and subsequent opt-out choices, and between notice from plaintiffs [*i.e.,* under Section 216(b) ] and notice from the court [*i.e.,* under Rule 23], ADEA notice would be separated in time from any Rule 23 notice which may eventually be required).

(2) *Prudential Factors.* Regardless of whether this court has the power to exercise pendent jurisdiction over the pendent state law claims, defendants assert that in weighing the factors of judicial economy, fairness to the litigants and the interests of

dent parties" with respect to the joinder of an additional defendant, its underlying rationale is also applicable to the issue presently facing this court: the potential incorporation of a class of plaintiffs, distinct from the ADEA class, whose claims are based solely on state law.

For example, the NJLAD, unlike the ADEA, does not contain a minimum age limit, thus persons under 40 could be members of the state but not of the federal class action (*compare* N.J.Stat.Ann. 10:5–12(a) *with* 29 U.S.C. § 631(a)). Defendants' argument that the NJLAD class action might generate more, or different, plaintiffs than the ADEA class action is most effectively conveyed by way of the following diagram:

Defendants' Reply Brief at 15.

**9.** In a letter to the court dated March 18, 1988, and again at oral argument, counsel for plaintiffs expressly represented that they would follow the court's approach in *Sperling* by stipulating to a limitation of certification of the pendent opt-out class to those who had already opted into the ADEA action.

federalism under the third prong of the *Ambromovage* test, this court should exercise its discretion and dismiss the pendent claims. Generally, this court recognizes that the interests of judicial economy favor one consolidated action. *See Gibbs, supra,* 383 U.S. at 724, 86 S.Ct. at 1138 (tendency of decisions is "to require a plaintiff to try his ... whole case at one time[ ]"); *see also Ambromovage, supra,* 726 F.2d at 989 ("judicial reality" is to dispose of multiple claims originating from "common nucleus of operative fact" in a single action).[10] Notwithstanding any judicial "economies of scale," however, this court also acknowledges that, "pendent jurisdiction [is] necessarily limited, on the other hand, by the principles of federalism which underlie constitutional and statutory limits on federal jurisdiction." *Ambromovage,* 726 F.2d at 989.

(a) New Jersey Law Against Discrimination (Count I). With respect to plaintiffs' NJLAD claim, defendants assert that this court will be faced with a myriad of novel issues under New Jersey state law which should first be decided by the state courts of New Jersey. For example, defendants note that there exist complicated subject matter jurisdictional questions of first impression as to the claims of plaintiff Robinson. Despite the fact that Robinson resides in New Jersey, he was employed, and thereafter dismissed, by Sizes Unlimited in New York; moreover, there is currently pending in New York an administrative

proceeding in his behalf. Defendants also assert that the exercise of pendent jurisdiction will create jury confusion as to the available remedies in each of the separate actions because the ADEA does not provide for compensatory or punitive damages, but instead allows for liquidated damages, *see* 29 U.S.C. § 626(b), whereas the NJLAD expressly permits recovery of compensatory damages, including mental pain and humiliation damages. *See Blum v. Witco Chemical Corp.,* 829 F.2d 367, 376–377 (3d Cir.1987) (citing *Andersen v. Exxon Co., U.S.A.,* 89 N.J. 483, 446 A.2d 486 (1982)).[11]

Although this court will not shirk its responsibility to decide novel issues of New Jersey state law, *see Woodson v. AMF Leisureland Centers, Inc.,* 842 F.2d 699, 702 (3d Cir.1988) (noting federal court must predict ruling of Supreme Court in diversity cases), this court does acknowledge that "[n]eedless decisions of [pendent] state law are to be avoided as a matter of comity." *Guyette v. Stauffer Chemical Co.,* 518 F.Supp. 521, 524 (D.N.J.1981) (citing *Gibbs, supra,* 383 U.S. at 726, 86 S.Ct. at 1139). *But see also Blum v. Witco Chemical Corp., supra,* 829 F.2d at 376 (federal court predicts New Jersey Supreme Court decision with respect to *pendent* tort cause of action).[12]

■ With respect to the application of the NJLAD to Robinson's age discrimination claim, which apparently arose in New

---

**10.** It is clear to this court, and defendants do not appear to argue to the contrary, that the federal and state age discrimination claims arise from "a common nucleus of operative fact." *But see infra* note 16 and accompanying text (discussing plaintiff Robinson's separate claim for handicap discrimination).

**11.** With respect to defendants' concerns as to the issue of jury confusion, "there is no reason why a federal court should refuse pendent jurisdiction simply because state law provides remedies above and beyond those provided by Congress." *Guyette v. Stauffer Chemical Co.,* 518 F.Supp. 521, 525 (D.N.J.1981). *See also Lusardi v. Xerox Corp.,* 99 F.R.D. 89, 94 (D.N.J.1983) (deferring decision on dismissal of pendent claims resulting from potential jury confusion).

If it should subsequently become apparent that jury confusion may result from the simultaneous presentation of plaintiffs' NJLAD and

ADEA claims, *see Mitroff v. Xomox Corp.,* 797 F.2d 271, 279 (6th Cir.1986) (dismissing pendent age discrimination claim due to salient prejudicial effect on ADEA claim), this court will consider the appropriate remedial action, including the possibility of bifurcating the trial. *See, e.g., Campolongo v. The Celotex Corp.,* 681 F.Supp. 261 (D.N.J.1988) (discussing severance of punitive damages phase from liability phase of asbestos exposure trial).

**12.** Interestingly enough, however, to support its prediction of New Jersey state law, the *Blum* court cited *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.,* 652 F.2d 1165, 1173 (3d Cir.1981), a case in which the Third Circuit anticipated the New Jersey Supreme Court on a claim founded upon *diversity* jurisdiction as opposed to the exercise of *pendent* jurisdiction.

York,[13] this court is unable to find any precedent in either the state or federal courts as to whether the substantive provisions of the NJLAD protect a New Jersey resident who is employed in another state. In *Warner v. Auberge Grey Rocks Inn,* 827 F.2d 938 (3d Cir.1987), the Third Circuit noted that with respect to choice-of-law questions:

> The New Jersey cases have almost uniformly applied New Jersey law in instances in which the state has a significant compensation interest *viz.,* where the plaintiff was a New Jersey domiciliary.

*Id.* at 941 (quoting *Schum v. Bailey,* 578 F.2d 493, 496 (3d Cir.1978)) (footnote omitted; other citations omitted). Accordingly, in *Grey Rocks* the Third Circuit held that the longer New Jersey statute of limitations would supplant that of a foreign jurisdiction, despite the fact that the injury occurred in the other jurisdiction. 827 F.2d at 942. *See accord Pine v. Eli Lilly & Co.,* 201 N.J.Super. 186, 492 A.2d 1079 (App. Div.1985) (applying New Jersey statute of limitations and "discovery rule"). Thus, in light of the fact that Robinson is a New Jersey resident and Sizes Unlimited is headquartered in Secaucus and it also operates stores throughout New Jersey, it appears that the New Jersey Supreme Court would apply the NJLAD to Robinson's claim of age discrimination even though he was employed in New York. *See Deemer v. Silk City Textile Mach. Co.,* 193 N.J.Super. 643, 648–649, 475 A.2d 648 (App.Div. 1984) (noting that New Jersey courts have abandoned "mechanical application" of *lex loci delicti* doctrine in favor of "governmental interest approach" in choice-of-law questions).[14]

■ Choice-of-law and jury confusion questions aside, defendants maintain that Robinson is precluded from bringing his NJLAD claim because of ongoing administrative proceedings filed by the Federal Equal Employment Opportunity Commission ("EEOC") with the New York State Division on Human Rights ("NYDHR"). Although there appears to be no law in this jurisdiction with respect to the interrelationship of NYDHR or EEOC charge-possessing and substantive NJLAD claims, in a similar situation the Southern District of New York held that New York law did not preclude a pendent state claim by a plaintiff who filed a Title VII [15] charge with the EEOC which was then referred to the NYDHR by the EEOC. *See Selbst v. Touche Ross & Co.,* 587 F.Supp. 1015, 1017 (S.D.N.Y.1984) (noting that New York law bars pendent suit only by those who filed directly with the NYDHR).

In the instant action, Robinson, like the plaintiff in *Selbst,* did not file directly with any state or local agency. Because this court finds the logic of *Selbst* to be intact, this court holds that Robinson is not precluded from bringing suit under the NJLAD merely because of the EEOC's deferral of his claim to the NYDHR. Therefore, this court like the court in *Selbst,* will not dismiss Robinson's pendent state law age discrimination claims.

■ (b) New Jersey Constitution (Count II). With respect to plaintiffs' claim under Article I, Paragraph 1 of the New Jersey Constitution, defendants assert that the

---

13. Defendants also argue that this court faces complicated jurisdictional questions concerning non-resident plaintiffs who will seek to avail themselves of the protections under NJLAD. This question, however, is not now before this court because both of the named plaintiffs, Robinson and Levine, are New Jersey residents and they have not yet moved for the certification of either the federal or state law classes. Moreover, in light of the fact that this court will not address the issue of certification of the NJLAD class until the ADEA class has been determined, *see supra* note 9 and accompanying text, it is premature to focus on this question.

14. It also appears that the New Jersey courts would have *in personam* jurisdiction over Sizes

Unlimited under the due process, "minimum contacts" analysis as developed by *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny (*e.g., Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) and *World-wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)), in light of the number of Sizes Unlimited stores in New Jersey and also the fact that Sizes Unlimited is headquartered in Secaucus, New Jersey.

15. Section 701 *et seq.* of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (amended 1978).

New Jersey courts have never decided whether, pursuant to this provision of the New Jersey Constitution, there exists a basis for a private claim for age discrimination. This argument, however, was refuted in *Peper v. Princeton University Board of Trustees*, 77 N.J. 55, 389 A.2d 465 (1978), in which the New Jersey Supreme Court expressly found that Article I, Paragraph 1 of the New Jersey Constitution created a private cause of action for employment discrimination arising from the "right to obtain gainful employment." 77 N.J. at 71–73, 389 A.2d 465. *See also Weber v. LDC/Milton Roy*, 42 FEP (BNA) Cases 1507, 1516 (D.N.J.1986) (noting existence of private right of action against age discrimination under New Jersey Constitution "regardless of whether or not implementing legislation has been adopted").

Although *Peper* and *Weber* were decided in the context of individual claims as opposed to class actions, this court cannot find (nor has defendant cited) any authority for the proposition that a class action is inappropriate under the New Jersey Constitution. Accordingly, this court will not dismiss plaintiffs' pendent claim under Article I, Paragraph 1 of the New Jersey Constitution.

C. Application of the *Ambromovage* Test to Robinson's Pendent State Law Claim.

■ The issue with respect to Robinson's separate claim of handicap discrimination under the NJLAD, N.J.Stat.Ann. 10:5–4.1, is whether this claim derives from a common nucleus of operative fact under the first prong of the *Ambromovage* test. Unlike plaintiffs' claims in the first three counts of the complaint (*i.e.*, the age discrimination claims), all which involve the specific issue of Sized Unlimited's alleged practice of age discrimination, Robinson's claim for handicap discrimination is clearly a claim distinct unto itself.

Despite Robinson's assertion that his handicap discrimination claim arises from the same nucleus of operative fact as the age discrimination claims, and even if it would require testimony by the same witness, this court finds that the legal theory of recovery under an ADEA age discrimination claim is entirely different from that of a handicap discrimination claim. *See Mason v. Richmond Motor Co., Inc.*, 625 F.Supp. 883, 886 (E.D.Va.1986) (noting that "loose factual connection" between federal and state claims does not fall within rubric of common nucleus of operative fact). *But see Frye v. Pioneer Logging Machinery, Inc.*, 555 F.Supp. 730 (D.S.C.1983) ("loose connection" sufficient). In following the *Mason* approach as opposed to that of *Frye*, this court finds that it does not have jurisdiction to entertain Robinson's pendent handicap discrimination claim.[16]

### III. CONCLUSION

For the above-stated reasons, defendants' motion to dismiss the state law courts of plaintiffs' complaint is hereby DENIED as to Counts I and II therein; and GRANTED as to Count IV therein.

Defendant shall submit an order conforming to this opinion within seven (7) days of the filing of this opinion.

---

**16.** In light of this court's holding that it does not have the power to exercise pendent jurisdiction under the first prong of *Ambromovage*, the question of discretion under the third prong is obviously irrelevant here.